## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**IN THE MATTER OF M&M WIRELINE &**              **CIVIL ACTION**
**OFFSHORE SERVICES, LLC**

                                                 **NO. 15-4999**
                                                 **C/W NO. 15-5338**

                                                 **SECTION: "G"(5)**

### ORDER

In this litigation, Plaintiff Beaux Cormier ("Cormier") alleges that he is entitled to damages from Defendant Saratoga Resources, Inc. and M&M Wireline & Offshore Services, L.L.C. ("M&M Wireline) (collectively "Defendants") as a result of Defendants' negligence and the unseaworthiness of Defendants' vessels that allegedly caused Cormier's accident.[1] Pending before the Court is M&M Wireline's "Motion for Partial Summary Judgment."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion.

### I. Background

In the complaint, Cormier alleges that he was employed by M&M Wireline as a Jones Act seaman on the M/V M&M 102.[3] Cormier alleges that on November 30, 2014, he was transported from a platform in the Grand Bay Field to the nearby M/V M&M 102 by a "Jon Boat" owned and/or operated by Saratoga.[4] According to Cormier, the operator of the Jon Boat positioned the

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 22.

[3] Rec. Doc. 1 at 2.

[4] *Id.* at 3.

1

boat so that the front of the Jon Boat was near and/or pushed up against the side of the M/V M&M 102.[5] When Cormier attempted to step up onto the deck, he alleges that the Jon Boat backed away from the M/V M&M 102, requiring Cormier to jump back onto the Jon Boat, resulting in Cormier losing his balance and landing partially on the Jon Boat and partially in the water.[6] Cormier contends that the Jon Boat was not connected or secured to the M/V M&M 102 in any way, nor were there other mechanisms in place to allow for safe ingress and egress to the M/V M&M 102.[7] Cormier alleges that at the time of his accident, the M/V M&M 102 was a vessel owned and operated by M&M Wireline & Offshore Services, L.L.C. and engaged in operations by Defendant Saratoga Resources, Inc. ("Saratoga").[8] Cormier alleges that Defendants are liable to him for negligence and for failing to provide seaworthy vessels.[9] Furthermore, Cormier alleges that M&M Wireline has a duty to provide him maintenance and cure.[10]

Cormier filed a complaint on October 21, 2015.[11] M&M Wireline, L.L.C. filed the instant motion on July 19, 2016.[12] Cormier filed an opposition on July 26, 2016.[13] M&M Wireline, L.L.C. filed a reply, with leave of Court, on July 29, 2016.[14]

---

[5] *Id.* at 3.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 4–5.

[10] *Id.* at 7.

[11] Rec. Doc. 1.

[12] Rec. Doc. 22.

[13] Rec. Doc. 28.

[14] Rec. Doc. 38.

## II. Parties' Arguments

### A.    M&M Wireline's Arguments in Support of Partial Summary Judgment

M&M Wireline moves for partial summary judgment regarding its obligation to provide maintenance and cure benefits to Cormier on the grounds that Cormier concealed and intentionally withheld information regarding previous back injuries that was material to the decision to hire him.[15] M&M Wireline contends that Cormier's back injuries are substantially the same injuries he seeks damages for in this case.[16] M&M Wireline asserts that when Cormier was hired in November 2014, he underwent a physical examination as part of the employment process during which he answered "No" to whether he had ever had a back injury.[17] However, M&M Wireline avers that Cormier, in fact, had a long and well-documented history of lower back problems.[18]

M&M Wireline asserts that it is well-settled that a seaman's failure to disclose a prior illness or disability when he had no good faith belief that he was fit for duty will bar a seaman's claim for maintenance and cure.[19] According to M&M Wireline, the Fifth Circuit in *McCorpen v. Central Gulf Steamship Corp.* established a three-part test to determine whether a seaman has forfeited his contractual right to maintenance and cure: (1) the plaintiff intentionally misrepresented or concealed medical facts; (2) the undisclosed facts were material to the employer's decision to hire the plaintiff; and (3) a connection exists between the withheld

---

[15] Rec. Doc. 22-1 at 1.

[16] *Id.*

[17] *Id.* at 2.

[18] *Id.*

[19] *Id.* at 4 (citing *McCorpen v. Cent. Gulf Steamship Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)).

3

information and the injury complained of in the instant suit.[20] M&M Wireline contends that the Fifth Circuit in *McCorpen* stated that "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure."[21] According to M&M Wireline, the "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement."[22] M&M Wireline asserts that Cormier filled out a questionnaire that specifically referenced back injuries and did not inform the doctor performing the examination of any previous back injuries.[23] M&M Wireline contends that whether or not the seaman thought his prior back injury was significant is irrelevant.[24] Therefore, M&M Wireline asserts that the first *McCorpen* prong is satisfied.[25]

As for the second *McCorpen* prong, whether the concealed facts were material, M&M Wireline contends that the fact that an employer asks a specific medical question, and that inquiry is rationally related to the applicant's physical ability to perform his job duties renders the information material.[26] According to M&M Wireline, the Fifth Circuit has previously held that questions regarding whether an applicant had prior injuries are material to determining the

---

[20] *Id.* at 4 (citing *McCorpen*, 396 F.2d at 548–49).

[21] *Id.* at 5 (quoting *McCorpen*, 396 F.2d at 549).

[22] *Id.* (quoting *Luce v. C&E Boat Rental, LLC*, No. 10-1334, 2010 WL 4553509, at *2 (E.D. La. Nov. 2, 2010)).

[23] *Id.*

[24] *Id.* at 6.

[25] *Id.*

[26] *Id.* at 7.

applicant's ability to perform the physically demanding work of a deck hand.[27] M&M Wireline asserts that Cormier was being considered for the same physically demanding job in this case and that the President of M&M Wireline asserts in his affidavit that prior back injuries are grounds for refusal of employment.[28]

Turning to the third *McCorpen* prong, whether a connection exists between the withheld information and the injury complained of in the instant suit, M&M Wireline contends that when the pre-existing condition and the alleged injuries involve the same body part, there is a presumption that the two are related.[29] M&M Wireline asserts that the inquiry on this prong is "simply whether the new injury is related to the old injury, irrespective of their root causes."[30] M&M Wireline asserts that the injuries complained of by Cormier substantially coincide with the injuries documented in his prior medical history.[31] Therefore, M&M Wireline argues that the third *McCorpen* prong is satisfied.[32] M&M Wireline argues that it is entitled to summary judgment because all three prongs of the *McCorpen* test are satisfied.[33]

---

[27] *Id.* (citing *Ramirez v. Am. Pollution Control Corp.*, 418 F. App'x 287, 290 (5th Cir. 2011)).

[28] *Id.* at 7–8.

[29] *Id.* at 8 (citing *In re Rene Cross Constr., Inc.*, No. 02-2153, 2003 WL 359936, at *2 (E.D. La. Feb. 14, 2003)).

[30] *Id.* (quoting *Luce v. C&E Boat Rental, LLC*, No. 10-1334, 2010 WL 4553509, at *6 (E.D. La. Nov. 2, 2010)).

[31] *Id.* at 8–9.

[32] *Id.* at 9.

[33] *Id.* at 10.

**B.**     ***Cormier's Arguments in Opposition to Partial Summary Judgment***

In opposition, Cormier asserts that M&M Wireline fired him without conducting any investigation into his injuries, medical treatment, or its maintenance and cure obligation.[34] Cormier contends that these facts also create credibility questions concerning the affidavit of M&M Wireline's President and Owner, Martin Quiram ("Quiram"), and because this affidavit is central to the case, summary judgment is not appropriate.[35] Cormier asserts that a genuine issue of material fact exists regarding the "intentional concealment or misrepresentation" prong of *McCorpen*.[36] Cormier avers that there is a factual dispute regarding the "ambiguous and misleading phraseology in the medical history items contained in Claimant's pre-employment physical with M&M [Wireline]."[37] Cormier contends that there are two medical records in which a nurse or nurse practitioner used the word "injury"; however, the medical history forms were unclear regarding what type of medical history was required to be reported.[38] Cormier also contends that M&M Wireline has mischaracterized Cormier's medical history as there are only two isolated instances where Cormier had any complaint of low back pain.[39] Cormier avers that although he underwent a prior lumbar MRI in 2005, it was not necessitated by any symptoms or problems, but rather was part of a pre-employment screening.[40] Cormier asserts that although

---

[34] Rec. Doc. 28 at 3.

[35] *Id.* at 4 (citing *S. United States Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 579439 (E.D. La. Feb. 22, 2012)).

[36] *Id.* at 8.

[37] *Id.* at 9.

[38] *Id.* at 10–11.

[39] *Id.* at 12.

[40] *Id.* at 13.

6

M&M Wireline cites the opinions of its retained medical experts who opine that no change occurred between Cormier's 2005 and 2015 MRIs, those opinions are "vehemently disputed" by Cormier's treating doctors.[41] Cormier also contends that he has asserted that his answers to his medical history questions were truthful and this creates a genuine issue of material fact.[42]

Next, Cormier argues that a genuine issue of material fact exists regarding the "materiality" prong of *McCorpen*.[43] Cormier asserts that Quiram's affidavit offers no evidence that M&M Wireline would not have hired him if the alleged "concealment" had been disclosed as he states only that Cormier's back injuries are "potentially grounds for refusing employment."[44] Cormier contends that a genuine issue of material fact exists when it is unclear whether an employer's hiring decision would be affected by the knowledge of a potential employee's previous injuries.[45]

Cormier also argues that there is a genuine issue of material fact regarding the "connection" prong of *McCorpen*.[46] Cormier assert that the injuries he sustained are "symptomatic disc injuries that resulted in numbness and tingling into both of [his] legs," but the two medical records relied upon by M&M Wireline are "nothing more than soft tissue type injuries that have nothing to do with [his] disc injuries following this accident."[47] Cormier also contends that there is a genuine

---

[41] *Id.*

[42] *Id.* at 16.

[43] *Id.* at 7.

[44] *Id.* (citing Rec. Doc. 22-12 at 1).

[45] *Id.* (citing *Dauzat v. Weeks Marine, Inc.*, No. 14-3008, 2016 WL 3167662 (E.D. La. June 7, 2016); *Cal Dive Int'l, Inc. v. Grant*, No. 11-1657, 2013 WL 1099157 (E.D. La. Mar. 15, 2013)).

[46] *Id.*

[47] *Id.* at 16–17.

issue of material fact regarding whether M&M Wireline's actions in denying him maintenance and cure benefits were arbitrary and capricious and therefore warrant penalties and an award of attorney's fees.[48]

Finally, Cormier lodges several objections to M&M Wireline's exhibits.[49] Cormier asserts that Record Document 21-20, which he contends is a blank application for Merchant Mariner Medical Certificate, is irrelevant and Record Documents 21-12 and 21-13, which he contends are the expert reports of Dr. Fakier and Dr. Cenac, are not sworn statements and therefore the reports are not admissible at trial.[50]

### C.    M&M Wireline's Arguments in Further Support of Partial Summary Judgment

In reply, M&M Wireline first contends that whether it denied Cormier maintenance and cure without investigation is not an issue relevant to the *McCorpen* analysis.[51] M&M Wireline contends that although Cormier alleges that he was injured on November 30, 2014, after his initial treatment in the emergency room, he did not seek any medical treatment for four months.[52] Furthermore, M&M Wireline asserts that Cormier did not give it any reason to believe that Cormier was suffering significant back pain stemming from the November 30 incident.[53] M&M Wireline asserts that, contrary to Cormier's assertions, Cormier was fired for not showing up to work.[54] In

---

[48] *Id.* at 17.

[49] *Id.*

[50] *Id.* at 17–18.

[51] Rec. Doc. 38 at 2.

[52] *Id.*

[53] *Id.* at 5.

[54] *Id.* at 7–8.

response to Cormier's argument that there is a credibility issue regarding Quiram's affidavit, M&M Wireline contends that there is nothing in the record to contradict Quiram's statements.[55] M&M Wireline also asserts that Cormier has serious credibility issues as well.[56]

Turning to the *McCorpen* analysis, M&M Wireline asserts that although Cormier argues that he did not intentionally conceal any prior back injury because he did not understand the questions on the "General Physical Form" to be asking him for his complete medical history, Cormier does not cite any case law to support his argument that the questions posed must be more specific than the questions at issue in this case.[57] M&M Wireline contends that in *McCorpen v. Central Gulf Steamship Corp.*, the Fifth Circuit held that the plaintiff was of sufficient intelligence and could understand English so he should have understood that "illness" encompassed his diabetes, even though the plaintiff asserted that his diabetes was under control.[58] M&M Wireline asserts that Cormier can read, write, and speak English and therefore has no excuse to not comprehend that "frequent backaches" and "back injury" would encompass a prior work injury that resulted in pain lasting over a month and ending with a visit to an emergency room, as well as an "ongoing problem" producing back pain lasting for at least a month.[59]

As for the second prong, materiality, M&M Wireline asserts that the law does not require the employer to show definitively that it would not have hired the plaintiff, but states that

---

[55] *Id.* at 8.

[56] *Id.*

[57] *Id.* at 9.

[58] *Id.* at 9–10 (citing 396 F.2d 547, 550 (5th Cir. 1968)).

[59] *Id.* at 10.

materiality is established if "an employer asks a specific medical question on an application, and the inquiry is rationally related to the applicant's physical ability to perform his job duties."[60] M&M Wireline cites *McNabb v. Bertucci Contracting*, a case from another section of the Eastern District of Louisiana, where, M&M Wireline contends, the court held that language in an affidavit from the safety director that the company would not have approved the plaintiff without further medical information regarding his prior accident and appropriate clearance to return to work was sufficient to satisfy the materiality prong.[61] M&M Wireline also cites the Fifth Circuit case *Ramirez v. American Pollution Control*, where, it contends, the court evaluated an affidavit stating not that the company would not hire the plaintiff, but rather that the plaintiff might be required to undergo further medical examinations.[62] According to M&M Wireline, the Fifth Circuit noted that the additional medical examinations would have at least delayed the hiring of the plaintiff, likely preventing him from being aboard the vessel at the time of the accident, and noted that the affidavit submitted by the company represented that a misrepresentation of pre-existing injuries would have resulted in termination.[63] M&M Wireline argues that Quiram's affidavit states that "falsification of medical background, or nondisclosure of a pre-existing condition, in the physical review process is ground for termination" and back injuries are potentially grounds for refusing employment.[64]

---

[60] *Id.* at 10–11 (quoting *Brown v. Parker Drilling Offshore*, 410 F.3d 166, 175 (5th Cir. 2005)).

[61] *Id.* at 11 (citing No. 12-1342, 2013 WL 1099156, at *6 (E.D. La. Mar. 15, 2013).

[62] *Id.* at 11–12 (citing 418 F. App'x 287, 291 (5th Cir. 2011)).

[63] *Id.* at 12 (citing 418 F. App'x at 290–91).

[64] *Id.*

Furthermore, M&M Wireline asserts that at the time of the incident, Cormier had only been working for M&M Wireline for eighteen days.[65]

Turning to the third prong, the connection between the old and new injuries, M&M Wireline asserts that there is no requirement that the injuries be identical, only that they are to the same location on the body.[66] M&M Wireline contends that although Cormier repeatedly refers to his prior injuries as "low back pain" or a "pulled muscle" unrelated to his current disc injuries, Cormier ignores the results of his 2005 MRI that show that he had significant disc injuries.[67] M&M Wireline cites *McNabb*, where, it contends, the district court held that the "causally related" prong was met where an MRI demonstrated a ruptured disc at the L5-S1 level and a post-accident MRI showed disc herniations at L3-4, L4-5, and L5-S1 levels.[68] M&M Wireline asserts that it is not relevant to this prong whether Cormier knew that the injuries were related.[69] Therefore, M&M Wireline argues that it is entitled to summary judgment because all three prongs of the *McCorpen* test are satisfied.[70]

---

[65] *Id.* at 12–13.

[66] *Id.* at 13.

[67] *Id.*

[68] *Id.* at 13–14 (citing 2013 WL 1099156, at *9).

[69] *Id.*

[70] *Id.* at 14.

### III. Law and Analysis

**A.**     ***Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[71] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[72] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[73] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[74] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[75]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes

---

[71] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[72] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[73] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[74] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[75] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

demonstrate the absence of a genuine issue of material fact.[76] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[77] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[78] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[79] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[80]

**B.     Analysis**

M&M Wireline moves for summary judgment on Cormier's claim for maintenance and cure benefits pursuant to *McCorpen v. Central Gulf Steamship Corp.* because, it asserts, Cormier "concealed and intentionally withheld information regarding prior back injuries" that are substantially the same injuries as those claimed in this lawsuit.[81] In opposition, Cormier contends

---

[76] *Celotex*, 477 U.S. at 323.

[77] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[78] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[79] *Little*, 37 F.3d at 1075.

[80] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[81] Rec. Doc. 22-1 at 1 (citing 396 F.2d 547 (5th Cir. 1968)).

that the Court should not grant summary judgment because there are genuine issues of material fact regarding each of the three *McCorpen* elements.[82]

"Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel."[83] However, an employer may deny a claim for maintenance and cure benefits if it can show that an injured seaman willfully concealed a preexisting medical condition from his employer.[84] In order to establish such a defense, pursuant to *McCorpen*, an employer must show that: "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit."[85] The Court will address each of these elements in turn.

### 1.      Cormier's Objections to Evidence

As an initial matter, the Court notes that Cormier objects to three of M&M Wireless' exhibits submitted in support of its motion for summary judgment: (1) Record Document 21-10, a blank application for Merchant Mariner Medical Certificate; (2) Record Document 21-12, an "Expert IME Report of Dr. Fakier"; and (3) Record Document 21-13, an "Expert IME Report of Dr. Cenac."[86] Pursuant to Federal Rule of Civil Procedure 56(c)(2), a party may object that the material cited to support or dispute a fact on a motion for summary judgment cannot be presented

---

[82] Rec. Doc. 28 at 7–17.

[83] *McCorpen*, 396 F.2d at 548.

[84] *Id.*; *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005)).

[85] *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548–49).

[86] Rec. Doc. 28 at 17–18.

in a form that would be admissible in evidence. Cormier asserts that the blank application is irrelevant and the two expert reports are not sworn statements and therefore are inadmissible at trial.[87] M&M Wireline does not respond to Cormier's objections.

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." M&M Wireline cites to the "Application for Merchant Mariner Medical Certificate" in support of its contention that the job of a deck hand is physically demanding;[88] however, it provides no further explanation of how this document is related to this case. The application states that the Coast Guard requires a physical examination and certification to be completed to ensure that mariners are healthy, have no physical limitations that would hinder or prevent performance of their duties, and are free of medical conditions that pose a risk of sudden incapacitation which could affect operating or working on vessels.[89] The form also contains a list of tasks "considered necessary for performing ordinary and emergency response shipboard functions."[90] At issue in this case is whether M&M Wireline's questions on its General Physical Form were rationally related to the applicant's physical ability to perform his duties.[91] Accordingly, evidence regarding ordinary shipboard tasks in an emergency is relevant and Cormier's objection is overruled.

---

[87] *Id.* at 18.

[88] Rec. Doc. 22-1 at 7.

[89] Rec. Doc. 22-11 at 1.

[90] *Id.* at 2.

[91] *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 172 (5th Cir. 2005).

Next, Cormier argues that the expert reports of Drs. Fakier and Cenac are not proper summary judgment evidence. In the Fifth Circuit, "[u]nsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."[92] These expert reports are unsworn letters that are not admissible summary judgment evidence. Accordingly, the Court sustains Cormier's objections to the expert reports of Drs. Fakier and Cenac and will not consider them in analyzing the instant motion.

### 2.    Intentional Misrepresentation or Concealment of Medical Facts

M&M Wireline contends that the first *McCorpen* prong is met because Cormier was required to fill out a questionnaire that made specific reference to previous injuries, including back injuries, but Cormier failed to reveal that he had a "long history of back pain and back injuries, including a work related injury."[93] In opposition, Cormier asserts that the "General Physical Form" that Cormier filled out contained no actual questions regarding Cormier's medical history, but instead listed three categories relating to the back: "[f]requent backaches," "[b]ack injury (upper)"; and "[b]ack injury (lower)."[94] Cormier asserts that these categories are subjective and ambiguous because an applicant and health care provider may each believe that the word "injury" covers different things.[95]

---

[92] *Provident Life and Accident Ins. Co.*, 274 F.3d 984, 1000 (5th Cir. 2001) (quoting 11 James Wm. Moore et. al., *Moore's Federal Practice* ¶ 56.41[3][c] (3d ed. 1997)) (internal quotations omitted).

[93] Rec. Doc. 22-1 at 6.

[94] Rec. Doc. 28 at 9.

[95] *Id.* at 10.

The Fifth Circuit in *Brown v. Parker Drilling Offshore Corp.* determined that the intentional concealment prong of the *McCorpen* defense does not require a finding of subjective intent.[96] The court stated that "Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury."[97] In *Brown*, the court concluded that the defendant had established as a matter of law that the plaintiff had knowingly concealed material medical information, rejecting the plaintiff's argument that he did not intend to conceal his medical condition and did not understand that his back injuries constituted back "trouble."[98] In *Brown*, the Fifth Circuit, quoting *McCorpen*, stated that "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure."[99]

Cormier argues that the "plainly desired" requirement is significant in this case as there is a "clear material factual issue in dispute regarding the ambiguous and misleading phraseology in the medical history items contained in [Cormier's] pre-employment physical with M&M [Wireline]."[100] On the "General Physical Form," M&M Wireline asked Cormier to complete a medical history in which there was a list of conditions and Cormier was to circle either "Y" for

---

[96] *Brown*, 410 F.3d at 173.

[97] *Id.* at 175.

[98] *Id.* at 172–74.

[99] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 173 (5th Cir. 2005) (quoting *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968)).

[100] *Id.* at 9.

yes or "N" for no.[101] Cormier circled "N" regarding "Back injury (lower)."[102] M&M Wireline has submitted medical records for Cormier indicating that in 2005, Cormier went to the emergency room complaining of lower back pain that he stated he had suffered for the previous month after he was injured pushing a pipe.[103] M&M Wireline has also submitted medical records from February 2013 in which Cormier reported that he was suffering back pain shooting down his left leg.[104] Cormier argues that there were no inquiries or questions regarding topics such as prior back sprains or muscle pulls that would make it clear to an applicant that he or she needed to identify all back problems, no matter how slight, and the fact that the General Physical Form references "frequent" back aches implies that an applicant need not list all back problems.[105]

Although Cormier asserts in his affidavit that he answered all the questions regarding his past medical history truthfully and that he did not write the words "injured" or "injury" in his medical records,[106] the intentional concealment prong "does not require a finding of subjective intent."[107] In *Brown*, the plaintiff argued that he did not understand that his back injuries, consisting of a "sore back" and "pulled muscle" constituted back "trouble" because he interpreted "trouble" to indicate serious injuries such as a broken back or neck.[108] The Fifth Circuit, stating that the

---

[101] Rec. Doc. 22-5 at 1.

[102] *Id.*

[103] Rec. Doc. 22-6.

[104] Rec. Doc. 22-8.

[105] Rec. Doc. 28 at 10.

[106] Rec. Doc. 28-5 at 3.

[107] *Brown*, 410 F.3d at 174.

[108] 410 F.3d 166, 172 (5th Cir. 2005).

intentional concealment prong of *McCorpen* is an "essentially objective inquiry," concluded that the defendant had established as a matter of law that the plaintiff had intentionally concealed his prior back injuries.[109] In this case, Cormier failed to disclose on the General Physical Form that he had previously suffered a lower back injury. His argument that he did not understand his previous incidents with this back to constitute "injuries" is unavailing in light of *Brown*. Accordingly, the Court concludes that Cormier intentionally misrepresented or concealed medical facts to satisfy the first prong of the *McCorpen* defense.

### 3. Materiality of the Non-Disclosed Facts to the Employer's Decision to Hire Cormier

Next, the Court turns to the materiality prong of the *McCorpen* defense. Cormier asserts that there is no evidence that M&M Wireline would not have hired Cormier if the alleged "concealment" had not been disclosed.[110] The Fifth Circuit in *Brown* held that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his duties, renders the information material for the purpose of [the materiality] analysis."[111] In this case, it is undisputed that M&M Wireline asked Cormier to disclose his medical history, including whether he had previously suffered any injuries to his lower back. Furthermore, the Fifth Circuit has acknowledged that the work of a deckhand is physically demanding and thus questions regarding medical history are rationally related to an applicant's ability to perform his duties.[112]

---

[109] *Id.* at 174–75.

[110] Rec. Doc. 28 at 7.

[111] 410 F.3d at 175.

[112] *Ramirez v. Am. Pollution Control Corp.*, 418 F. App'x 287, 290 (5th Cir. 2011).

Citing *Dauzat v. Weeks Marine, Inc.* and *Cal Dive International, Inc. v. Grant*, Cormier argues that courts in the Eastern District of Louisiana have concluded that a genuine issue of material fact exists when it is "unclear whether an employer's hiring decision would be affected by the knowledge of a potential employee's previous injuries."[113] The Fifth Circuit determined in *Jauch v. Nautical Services, Inc.* that if the vessel owners would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure.[114] However, the cases cited by Cormier, which are not binding on this Court, are nevertheless distinguishable. In *Cal Dive International, Inc.*, the court, in concluding that there was a genuine issue of material fact regarding whether the plaintiff's non-disclosure of her back injuries was material, noted that there was evidence in an affidavit that the company may have hired the plaintiff even if she had disclosed her back injuries.[115] In *Dauzat*, the court concluded that there was a genuine issue of material fact regarding the materiality prong because the affidavit submitted by the defendants from the risk management director, who asserted that he had the authority to prevent an applicant's placement based upon information contained in a medical information, was contradicted by the director's deposition testimony, in which he said that he merely made recommendations to another individual who ultimately made the final decision.[116] Therefore, the court in *Dauzat* concluded that the defendants had not presented any competent

---

[113] Rec. Doc. 28 at 7–8 (citing *Dauzat v. Weeks Marine, Inc.*, No. 14-3008, 2016 WL 3167662 (E.D. La. June 7, 2016); *Cal Dive Int'l, Inc. v. Grant*, No. 11-1657, 2013 WL 1099157 (E.D. La. Mar. 15, 2013)).

[114] 470 F.3d 207, 212 (5 Cir. 2006) (per curiam).

[115] 2013 WL 1099157, at *5.

[116] 2016 WL 3167662, at *3.

summary judgment evidence from someone with authority to make hiring decisions to establish that the misrepresentation or concealment was material.[117]

In the Fifth Circuit case *Ramirez v. American Pollution Control Corp.*, the plaintiff argued that there was a genuine issue of material fact regarding whether the defendant would have hired him even if he had disclosed his preexisting injuries.[118] In support, the plaintiff pointed to testimony in which the employee in charge of hiring and firing deckhands stated that if the captain of the vessel had wanted to hire the plaintiff, the company would have conducted further medical evaluations.[119] The Fifth Circuit concluded that this testimony did not create a genuine issue of material fact regarding materiality because the employee did not state that the company would have hired the plaintiff, but rather that the plaintiff could have been subject to further medical examination.[120] In addition, the court noted that the employee had testified that the plaintiff would have been terminated if he had learned that the plaintiff had misrepresented his preexisting injuries.[121] Here, M&M Wireline has presented evidence that it asked Cormier to disclose his medical history, including whether he had suffered any injuries to his lower back in particular, and that any concerns about a candidate's physical injuries are brought to the immediate attention of the President of M&M Wireline Martin Quiram, who maintains review and advisory authority over the crew hiring process.[122] Quiram states in his affidavit that back injuries are potentially

---

[117] *Id.* at *3.

[118] 418 F. App'x 287, 290 (5th Cir. 2011).

[119] *Id.*

[120] *Id.*

[121] *Id.* at 291.

[122] Rec. Doc. 22-12.

grounds for refusing employment and that falsification of medical background, or nondisclosure of a pre-existing condition, is grounds for immediate termination.[123]

Cormier argues that the Court should deny the motion for summary judgment because the credibility issues regarding Quiram's affidavit create a genuine issue of material fact.[124] In support, Cormier cites *Southern United States Trade Association v. Unidentified Parties*, a case from another section of the Eastern District of Louisiana.[125] In *Southern United States Trade Association*, the court denied the defendant's motion for summary judgment on the grounds that the defendant relied solely upon his self-serving affidavits for support and because his credibility was a fact issue to be decided by the jury.[126] In that case, the plaintiff alleged that the defendant had posted numerous defamatory statements about the defendant on several websites and on the motion for summary judgment, the defendant submitted an affidavit in which he asserted that he did not make the alleged statements, as well as an affidavit from the defendant's employee who asserted that the employee had posted the statements.[127] The court denied the motion, stating that the Constitution guarantees a trial by jury, not trial by affidavit.[128]

On motions for summary judgment, courts must refrain from making credibility determinations or weighing the evidence.[129] Moreover, Cormier only generally asserts that there

---

[123] *Id.*

[124] Rec. Doc. 28 at 4.

[125] *Id.* at 5 (citing *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 579439 (E.D. La. Feb. 22, 2012)).

[126] 2012 WL 579439, at *2.

[127] *Id.*

[128] *Id.*

[129] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

are credibility issues with Quiram because Cormier's claim for maintenance and cure was denied without investigation.[130] Cormier does not point to any evidence before the Court on the motion for summary judgment to specifically contest Quiram's statements regarding hiring practices, or demonstrate why Quiram specifically is not a credible witness. Furthermore, as stated above, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his duties, renders the information material for the purpose of [the materiality] analysis."[131] Therefore, as in *Ramirez*, Cormier has failed to raise a genuine issue of material fact regarding the second *McCorpen* prong, the materiality of the plaintiff's non-disclosure.

### 4.    Causality

The Court now turns to the third prong of the *McCorpen* defense: whether a connection exists between the withheld information and the injury complained of in the lawsuit.[132] "[E]ven an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained."[133]

The Fifth Circuit in *Brown* determined that because the injuries the plaintiff suffered while working aboard the vessel were in the same location of the lumbar spine as his previous injuries,

---

[130] Rec. Doc. 28 at 2–4.

[131] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 175 (5th Cir. 2005).

[132] *Id.* at 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 548–49).

[133] *Id.* at 175 (internal quotations omitted) (quoting *Howard v. A.S.W. Well Serv. Inc.*, No. 89-2455-L, 1991 WL 365060, at *2 (W.D. La. Dec. 5, 1991)).

23

the causal link between the concealed information and the new injury had been established.[134] In support, the court in *Brown* cited a case from another section of the Eastern District of Louisiana, *Weatherford v. Nabors Offshore Corp.*, where the court stated that "[w]here plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear."[135] In *Weatherford*, the court determined that there was an "obvious causal connection" between the plaintiff's previous and current injuries because the plaintiff had admitted to concealing a prior injury to his lower back and, in his instant claim, included an allegation of a "sharp, stabbing pain" in his lower back.[136]

Cormier asserts that the injuries he complains of in this lawsuit are unconnected to any past medical records and any previous injuries "were nothing more than soft tissue type issues that have nothing to do with Claimant's disc injuries following this accident."[137] In support, Cormier cites the deposition testimony of Dr. John Sledge ("Dr. Sledge") who asserts that there is a "new herniation that wasn't there on the 2005 images" at the L4-L5 level and it was a "new herniation superimposed on top of the old herniation."[138] Dr. Sledge also asserts that Cormier had "substantial complaints of low back pain into his legs with numbness and tingling in both of his legs that persisted throughout the entirety of [Dr. Sledge's] treatment before . . . surgery."[139] Cormier also

---

[134] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 176 (5th Cir. 2005).

[135] *Id.* (citing No. Civ. A. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (Duval, J.))

[136] 2004 WL 414948, at *3.

[137] Rec. Doc. 28 at 17.

[138] Rec. Doc. 28-6 at 7.

[139] *Id.* at 14–15.

cites to Dr. Sledge's testimony in which he states that the occurrence of the two incidents in Cormier's medical history are not indicative of signs of instability or symptomatic structural problems in his back.[140]

The Fifth Circuit has stated that "there is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."[141] In *Brown*, the plaintiff argued that the defendant had not established causality because there was no proof that he had suffered a previous disc herniation and there was no indication from the expert reports that any herniated disc preexisted his employment.[142] The Fifth Circuit in *Brown* held that because the plaintiff's injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury was established.[143] In *Hare v. Graham Gulf, Inc.*, another section of the Eastern District of Louisiana held the defendant had clearly satisfied the third prong of the *McCorpen* defense because the plaintiff's spinal injury was at the "same spinal level as the injury giving rise to this suit."[144] In this case, the evidence presented shows not only that the injuries complained of in this case are both to the lower back, as in *Brown*, but here, Cormier's expert has testified that the injuries are to the exact same portion of the spine. Therefore, Cormier has failed to raise a genuine issue of material fact regarding the third prong of the *McCorpen* defense.

---

[140] *Id.* at 18.

[141] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 176 (5th Cir. 2005) (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)) (internal quotations omitted).

[142] *Id.*

[143] *Id.*

[144] 22 F. Supp. 3d 648, 654–55 (E.D. La. 2014).

## IV. Conclusion

Based on the foregoing, the Court concludes that Cormier has failed to raise a genuine issue of material fact regarding any of the three prongs of the *McCorpen* defense. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Partial Summary Judgment"[145] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this 29th day of August, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[145] Rec. Doc. 9.