**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF M&M WIRELINE &**
**OFFSHORE SERVICES, LLC**

**CIVIL ACTION**

**NO. 15-4999**
**C/W NO. 15-5338**

**SECTION: "G"(5)**

**ORDER**

Before the Court is Plaintiff Beaux Cormier's "Motion in Limine to Exclude the Expert
Report and Prospective Testimony and/or Data of David Scruton and Martin Gee, or in the
Alternative, to Limit Certain Prospective Testimony of David Scruton."[1] Having considered the
motion, the memoranda in support and in opposition, the record, and the applicable law, the Court
will grant the motion in part and deny the motion in part.

**I. Background**

In this litigation, Plaintiff Beaux Cormier ("Cormier") alleges that he was employed by
M&M Wireline & Offshore Services, LLC ("M&M Wireline") as a Jones Act seaman on the M/V
M&M 102.[2] Cormier alleges that on November 30, 2014, he was transported from a platform in
the Grand Bay Field to the nearby M/V M&M 102 by a "Jon Boat" owned and/or operated by
Defendant Saratoga Resources, Inc. ("Saratoga").[3] According to Cormier, the operator of the Jon
Boat positioned the boat so that the front of the Jon Boat was near and/or pushed up against the

---

[1] Rec. Doc. 23.

[2] Rec. Doc. 6 at 10.

[3] *Id.* at 11.

1

side of the M/V M&M 102.[4] When Cormier attempted to step up onto the deck, he alleges that the Jon Boat backed away from the M/V M&M 102, requiring Cormier to jump back onto the Jon Boat, resulting in Cormier losing his balance and landing partially on the Jon Boat and partially in the water.[5] Cormier asserts this resulted in the injuries and damages of which he now complains.[6] Cormier contends that the Jon Boat was not connected or secured to the M/V M&M 102 in any way, nor were there other mechanisms in place to allow for safe ingress and egress to the M/V M&M 102.[7] Cormier alleges that at the time of his accident, the M/V M&M 102 was a vessel owned and operated by M&M Wireline and engaged in operations by Saratoga (collectively, "Defendants").[8] Cormier alleges that Defendants are liable to him for negligence and for failing to provide seaworthy vessels.[9] Defendants argue that any injury Cormier sustained resulted solely from Cormier's own fault, and that Cormier's alleged back injury pre-existed the incident at issue in this litigation.[10]

Cormier filed his answer to M&M Wireline's original complaint for limitation of liability and the above claims on November 25, 2015.[11] On June 30, 2016, Defendants filed a witness list identifying only David Scruton as their "marine safety expert."[12] The same day, Defendants filed

---

[4] *Id.*

[5] *Id.* at 11–12.

[6] *Id.* at 12.

[7] *Id.* at 10.

[8] *Id.*

[9] *Id.* at 12–14.

[10] Rec. Doc. 15 at 5–6.

[11] Rec. Doc. 6.

[12] Rec. Doc. 16.

an expert report signed by both David Scruton and Martin Gee, Scruton's colleague at 3D Marine USA, Inc. who was not listed on the Defendants' witness list.[13] On July 19, 2016, Cormier filed the instant motion seeking to exclude and/or limit Defendants' two potential expert witnesses and the opinions contained within the expert report.[14] Defendants have opposed the motion.[15]

## II. Parties' Arguments

### A.    Cormier's Arguments in Support of Motion To Exclude and/or Limit Defendants' Expert Testimony

In his motion, Cormier moves to exclude the opinions contained within the June 23, 2016 expert report and testimony of Defendants' two proposed expert witnesses, David Scruton and Martin Gee, or, in the alternative, to limit the testimony of David Scruton.[16] First, Cormier argues that Gee does not qualify as a "marine safety" expert.[17] Under Federal Rules of Evidence 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education," and may testify as an expert if: (a) her "scientific, technical, or other specialized knowledge will help the trier of fact;" (b) if "the testimony is based on sufficient facts or data;" (c) if "the testimony is the product of reliable principles and methods;" and (d) if "the expert has reliably applied the principles and methods to the facts of the case."[18] Cormier argues that Gee lacks any knowledge, skill, experience, training, or education that would qualify him as a "marine safety expert."[19]

---

[13] Rec. Doc. 23-8.

[14] Rec. Doc. 23.

[15] Rec. Doc. 26.

[16] Rec. Doc. 23 at 1; Rec. Doc. 23-1 at 18.

[17] Rec. Doc. 23-1 at 8.

[18] Fed. R. Evid. 702.

[19] Rec. Doc. 23-1 at 9.

Cormier points out that the word "safety" does not appear anywhere on Gee's Curriculum Vitae, and he has apparently never held a position with "safety" in the job title.[20] According to Cormier, Gee has never authored a relevant publication, and his listing of cases in which he provided expert testimony only states he was "involved in DEEPWATER HORIZON" by giving a sworn statement to the United States Coast Guard.[21] Therefore, Cormier asserts that Gee lacks the qualifications to serve as a "marine safety" expert for Defendants, and any opinions, data, comments, or testimony he rendered is unreliable and should be excluded.[22]

Relatedly, Cormier alleges that Scruton's expert testimony and report is based, in whole or in part, on the investigations, data collection, and opinions of Gee, who Cormier alleges is an unreliable and unqualified source; therefore, Scruton should also be excluded from testifying.[23] Cormier argues that Scruton admitted that he did not attend the physical inspection of the two vessels at issue that occurred on June 1, 2016, on which the expert report is partially based.[24] Instead, only Gee attended the inspection.[25] Cormier states that Gee is not a qualified expert and there was no set protocol to independently establish the reliability of Gee's investigation and opinions on which Cormier relies.[26] The report is also signed by both Gee and Scruton and does

---

[20] *Id.*

[21] *Id.* at 9–10.

[22] *Id.* at 10.

[23] *Id.*

[24] *Id.* at 8.

[25] *Id.*

[26] *Id.*

not indicate which individual gathered the data and formulated the opinions therein.[27] Additionally, the seven opinions rendered in the report begin with the phrase "[w]e are of the opinion . . . " indicating that they were rendered and formulated, either in whole or in part, on the allegedly non-qualified efforts of Gee.[28] Thus, Cormier argues, because Gee is not qualified as an expert and his investigation is thus unreliable, Scruton's opinions and comments, which rely in whole or in part on Gee's sole investigation and data collection, are also unreliable and inadmissible.[29] In other words, Cormier argues that if a purportedly qualified expert's testimony is "the product of an unreliable foundation, unreliable principles and methods and/or not based on sufficient facts or data," then it should be excluded.[30] Furthermore, because Gee was not listed on Defendants' witness list filed by this Court's Scheduling Order deadline,[31] Cormier urges the Court to exclude Gee from testifying in this case.[32] In sum, Cormier requests that this Court exclude the opinions contained within the Defendants' June 23, 2016 expert report as well as any testimony, comments, and opinions of both Martin Gee and David Scruton.[33]

In the alternative, if the Court permits Scruton to testify, Cormier argues that Scruton's testimony regarding Defendants' expert report should still be limited to exclude opinion number

---

[27] *Id*. at 5.

[28] *Id*. at 10.

[29] *Id*.

[30] *Id*. at 9.

[31] *See* Rec. Doc. 9.

[32] Rec. Doc. 23-1 at 4.

[33] *Id*. at 18.

one;[34] opinion number three;[35] opinion number four;[36] opinion number six;[37] and opinion number seven[38] of the expert report.[39] More specifically, Cormier requests this Court exclude any evidence, testimony, comments, and opinions offered by Scruton as a "marine safety" expert on (1) the credibility and veracity of the testimony of Cormier or any of his witnesses; (2) Cormier's pre-employment applications and the employee hiring practices of M&M Wireline; (3) Cormier's medical condition, treatment, and history; (4) the causation of Cormier's injuries; (5) Cormier's health insurance availability; (6) the proximity of Cormier's house to a hospital; (7) Cormier's alleged meeting with a lawyer before going to a doctor; (8) Cormier's work history and training;

---

[34] Opinion number one states: "We are of the opinion that Mr. Cormier was an experienced deckhand, who should have been able to safely embark and disembark between the flatboat and M&M 102." Rec. Doc. 23-8 at 11. Cormier argues these factual issues simply mirror Cormier's deposition and are within the common experience and knowledge of the factfinder. Rec. Doc. 23-1 at 15–16 (citing *In re Midland Enterprises, Inc.*, No. CIV.A. 00-3750, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.) (stating that the expert testimony "will not bring to the jury anything more than the lawyers can offer in argument and such opinions should be excluded")).

[35] Opinion number three states: "We are of the opinion that Mr. Cormier did not truthfully complete the M&M Wireline Services employment application form and General Physical Form, and thus denied M&M Wireline Services and his direct supervisor the relevant information they needed to ensure that Mr. Cormier was assigned the appropriate tasks when working onboard." Rec. Doc. 23-8 at 11. Cormier alleges this weighs the credibility and veracity of Cormier's testimony and is outside the scope of Scruton's expertise. Rec. Doc. 23-1 at 11.

[36] Opinion number four states: "We are also of the opinion that although Mr. Cormier testified that his back injuries occurred during the incident, such allegations appear somewhat questionable based on the fact that he continued to work for three and a half months after the alleged incident. During this time period he performed the same strenuous duties that he had before." Rec. Doc. 23-8 at 11. Cormier alleges that opining on Cormier's medical background falls outside the scope of Scruton's expertise. Rec. Doc. 23-1 at 12.

[37] Opinion number six states: "We are of the opinion that the vertical height difference between M&M 102 and the flatboat was to the approximate order of 12 to 14 inches, and that Mr. Cormier could have safely stepped between the vessels without difficulty, had he waited to transfer until the bow of the flatboat was pushed up against the barge." Rec. Doc. 23-8 at 12. Cormier alleges that Scruton did not personally inspect the vessels, and thus cannot testify as to any measurements taken or data collected, and that this weighs the credibility of witnesses by disregarding testimony to the contrary. Rec. Doc. 23-1 at 17.

[38] Opinion number seven states: "We are of the opinion that the incident is consistent with having occurred as testified by Mr. Osterholm when Mr. Cormier unexpectedly jumped from the flatboat to M&M 102, , [sic] as confirmed in the contemporaneous Incident Report signed by Mr. Cormier himself." Rec. Doc. 23-8 at 12. Cormier alleges this weighs the credibility and veracity of witness testimony. Rec. Doc. 23-1 at 13–14.

[39] Rec. Doc. 23-8 at 11–12.

(9) the inspection, measurements taken, and data collected during the June 1, 2016, physical inspection of the two vessels that Scruton did not attend; and (10) whether Cormier attempted to step between the Jon Boat to the M/V M&M 102 barge before the Jon Boat was butted and/or pushed up against the barge.[40]

Overall, Cormier asserts that these statements are "irrelevant, speculative, unfairly prejudicial, misleading, concern areas that are within the common knowledge and experience of the jury and exceed the scope of Scruton's purported 'marine safety' expertise."[41] Additionally, Cormier contends that each of these opinions usurps the factfinder's authority by weighing his credibility as a plaintiff against other witnesses.[42]

**B.    M&M Wireline's Arguments in Opposition to Motion to Exclude**

Defendants oppose Cormier's motion to exclude Defendants' expert witnesses.[43] In response to Cormier's claim that Martin Gee is not qualified as a "marine safety" expert, Defendants contend that Gee has numerous qualifications that would allow him to render an expert opinion in this case.[44] According to Defendants, Gee has a degree in marine engineering, is a licensed chief engineer for motor and steam vessels, and is an ABS qualified external auditor.[45] Gee also has thirteen years of experience as a vessel officer, ten years of experience as a marine

---

[40] *Id.* at 18–19; *see also id.* at 10–18 (explaining in detail why each of Scruton's challenged opinions should be limited).

[41] *Id.* at 5–6.

[42] *Id.*

[43] Rec. Doc. 26 at 1.

[44] *Id.*

[45] *Id.* at 2.

surveyor, and five years of experience as a marine engineering manager.[46] Defendants state that Cormier has provided no authority for his argument that a person with Gee's level of education, training, and experience cannot testifying regarding subjects related to his field of expertise.[47] Defendants state that a lack of specialization specifically in vessel safety affects only the weight given to testimony by the factfinder, not admissibility.[48] Accordingly, Defendants assert that Gee is qualified to render an expert opinion on the safety aspects of vessel design and operation.[49] Furthermore, Defendants state that Cormier was indeed aware of Gee's involvement in the case from the expert report and Scruton's deposition, both of which notified Cormier of Gee's involvement prior to the deposition and discovery deadlines on July 26, 2016.[50] Therefore, Cormier could have timely taken Gee's deposition or timely requested an extension of the Court's deadline to do so.[51]

Relatedly, Defendants oppose Cormier's argument that Scruton's opinions are inadmissible because they rely on Gee's vessel inspection and data gathering.[52] Defendants point to *Suazo v. Atlantic Sounding*,[53] where another judge in the Eastern District of Louisiana relied on Fifth Circuit and Supreme Court precedent to reject a similar argument against David Scruton in a

---

[46] *Id*. at 2.

[47] *Id*.

[48] *Id* (citing *Cashman Equip. Corp. v. Rozel Operating Co.*, 2012 WL 2519970, at *6 (W.D. La. June 28, 2012) (internal citations omitted)).

[49] *Id*.

[50] *Id*. at 1–2.

[51] *Id*.

[52] *Id*. at 3.

[53] 2009 WL 3254446, at *2 (E.D. La. Mar. 10, 2009) (Vance, J.).

different case.[54] There, the court held that "experts are permitted to assume the underlying facts that form the basis for their opinion"[55] and "an expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge."[56] The court concluded that Scruton's opinion on vessel equipment that he had not personally inspected was admissible, and questions regarding the facts and underlying assumptions can be properly subjected to cross examination.[57] Additionally, Defendants assert that the expert report was also based on thirteen different documents listed on the first page, including photographs of the two vessels, and Cormier was able to extensively question Scruton on the contents and production of the report during Scruton's deposition.[58] Defendants also note that Cormier's proposed expert, Robert Borison, did not inspect either vessel before rendering his report on which Cormier relies.[59]

In response to Cormier's alternative argument to limit Scruton's testimony, Defendants state that they are "not necessarily opposed to a limitation of testimony" as requested by Cormier.[60] Defendants state that Cormier does not challenge opinion number two[61] and opinion number five[62]

---

[54] *Id.*

[55] *Id* (citing *Cromwell v. Wal-Mart Stores, Inc.*, 46 F. App'x 733 (5th Cir. 2002)).

[56] *Id* (citing *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579, 592 (1993)).

[57] *Id. See also Roy v. Florida Marine Transporters, Inc.*, 2004 WL 551208, at *5 (E.D. La. March 18, 2004) (stating that such questions regarding the facts and assumptions considered by an expert are "proper topics for cross examination and go to the weight that the court will afford [the expert's] opinion.")

[58] Rec. Doc. 26 at 3–4.

[59] *Id.* at 4.

[60] *Id.* at 5.

[61] Opinion number two states: "We are also of the opinion that Mr. Cormier had a responsibility to act in a safe and responsible manner when transferring from one vessel to another." Rec. Doc. 23-8 at 11.

[62] Opinion number five states: "We are of the opinion that the various comments in the Total Safety Services report dated May 2th 2016 have no basis or support, and are misleading for the fact finder." *Id.*

of the expert report, and Cormier's challenge to opinion number six[63] is the same as his challenge to all of Scruton's testimony, *i.e.* that only Gee attended the vessel inspections.[64]

### III. Law and Analysis

*A.*      *Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[65] Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[66]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[67] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

---

[63] Opinion number six states: "We are of the opinion that the vertical height difference between M&M 102 and the flatboat was to the approximate order of 12 to 14 inches, and that Mr. Cormier could have safely stepped between the vessels without difficulty, had he waited to transfer until the bow of the flatboat was pushed up against the barge." *Id*. at 12.

[64] Rec. Doc. 26 at 4–5.

[65] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[66] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[67] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

the relevant field."[68] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[69]

A court's role as a gatekeeper does not replace the traditional adversary system,[70] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[71] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[72] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[73]

**B.    Analysis**

Cormier presents two interrelated arguments regarding Defendants' potential expert witnesses, David Scruton and Martin Gee, and the opinions contained in their expert report. First, Cormier argues that Gee is unqualified to serve as a "marine safety" expert and should not be permitted to testify. Second, because Scruton's testimony is based, in whole or in part, on Gee's investigation and data collection, Cormier argues that Scruton's testimony must also be excluded.

---

[68] *Kumho Tire*, 526 U.S. at 152.

[69] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[70] *See Daubert*, 509 U.S. at 596.

[71] Fed. R. Evid. 702 advisory committee's note to 2000 Amendments.

[72] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[73] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

The Court begins by noting that Defendants' original witness list only states that David Scruton would be testifying as a marine safety expert, not Martin Gee.[74] Pursuant to the Court's Scheduling Order, both parties were required to provide a list of all witnesses who will be called to testify at trial no later than June 30, 2016.[75] It further states that the Court "will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, *without an order to do so issued on motion for good cause shown*."[76] The Scheduling Order only permits extensions of deadlines "upon timely motion filed" and "upon a showing of good cause,"[77] and also states that "[t]he Court requires strict adherence to scheduling orders and deadlines."[78]

On July 28, 2016, after the present motion was filed, Defendants filed an amended witness list, adding Martin Gee as a second "marine safety" expert,[79] and an amended exhibit list, adding two new exhibits.[80] These amendments were filed nearly a month after the June 30, 2016 deadline to file final witness and exhibit lists and two days after the deadline for discovery and depositions.[81] However, Defendants have not filed a motion requesting leave to amend their final witness and exhibit lists, and, accordingly, this Court has not issued an order permitting late amendments to be

---

[74] *See* Rec. Doc. 16.

[75] Rec. Doc. 9 at 3.

[76] *Id.* at 3–4 (emphasis added).

[77] Rec. Doc. 9 at 5.

[78] *Id.*

[79] Rec. Doc. 33.

[80] Rec. Doc. 34.

[81] *See* Rec. Docs. 33–34.

filed. Thus, in a concurrent order, this Court held that Defendants' amended witness and exhibit lists were improperly filed and granted Cormier's motion[82] to strike both the amended witness list and the amended exhibit list from the record. [83] Accordingly, Gee cannot be called as a witness. Therefore, the Court finds it unnecessary to determine if Gee should be excluded from testifying under *Daubert*, and will grant Cormier's requested relief as to exclude Gee's testimony on procedural grounds.

Next, Cormier contends that Scruton's testimony and the opinions contained in Defendants' expert report must be excluded as unreliable because they are based, at least partially, on Gee's opinions and his inspection of the two vessels on June 1, 2016. Cormier essentially argues that expert testimony based on the observations and investigations of individuals who are not qualified as experts can render the entire expert testimony and report unreliable and, thus, inadmissible under *Daubert*. Rule 702 of the Federal Rules of Evidence gives the Court considerable discretion over the admission of expert testimony.[84] It provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[85] For the expert testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based upon sufficient facts or data,

---

[82] Rec. Doc. 43.

[83] *See* Rec. Doc. 61 (Order granting Cormier's motion to strike the Amended Witness List and the Amended Exhibit List, Rec. Docs. 33–34).

[84] *See Suazo v. Atl. Sounding Co.*, No. CIV. A. 05-6043, 2009 WL 3254446, at *1 (E.D. La. Mar. 10, 2009).

[85] Fed. R. Evid. 702.

13

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the witness [must apply] the principles and methods reliably to the facts of the case.[86]

Cormier does not dispute Scruton's own qualifications to testify as a "marine safety" expert or that Scruton's technical or specialized knowledge will help the trier of fact understand the evidence. Rather, he avers that the sources of facts and data on which the expert report and Scruton's testimony are based, *e.g.*, Gee, render them unreliable.[87]

However, Cormier's arguments run counter to the standards set by the Supreme Court, the Fifth Circuit, and the Federal Rules of Evidence. In *Daubert*, the Supreme Court directly held that an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."[88] Similarly, in *Cromwell v. Wal-Mart Stores, Inc.*, the Fifth Circuit stated that "experts are permitted to assume the underlying facts that form the basis for their opinions."[89] Federal Rule of Evidence 702 simply requires that the expert testimony be founded on "sufficient facts or data" and be "the product of reliable principles and methods."[90] Likewise, Federal Rule of Evidence 703 allows experts to base their opinions on facts or data that "that the expert has been made aware of," provided that "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[91] As the advisory committee notes to the 1972 proposed rules for Rule 703 suggest, the expert may rely on

---

[86] *Id.*

[87] Rec. Doc. 23-1 at 5.

[88] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 692 (1993).

[89] 46 F. App'x. 733, at *2 (5th Cir. 2002) (quotations omitted).

[90] Fed. R. Evid. 702.

[91] Fed. R. Evid. 703.

"numerous sources and of considerable variety,"[92] which extends to both expert and non-expert third party sources.[93] As the Fifth Circuit has stated, "[t]he modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties."[94]

Here, David Scruton's testimony is founded on his extensive maritime and marine safety experience and knowledge,[95] and the expert report lists thirteen different documents beyond data gathered during Gee's physical inspection on which Scruton's testimony will be based.[96] These sources include four depositions, accident and survey reports, photographs of both vessels, and Cormier's own expert witness report.[97] Cormier has cited no contrary authority that would prevent Scruton from also utilizing the data gathering and assistance of other colleagues, such as Gee, to formulate his own opinions and testimony. While Cormier contests that Gee is unqualified to testify as a "marine safety" expert at trial and argues that there was "no set protocol to establish the reliability of Martin Gee's investigation and inspection,"[98] he does not assert how the methodology was so flawed that it would render Scruton's entire testimony unreliable. The Court

---

[92] Fed. R. Evid. 703 advisory committee's notes to 1972 proposed rules.

[93] *See Soden v. Freightliner Corp.*, 714 F.2d 498, 502 n.4 (5th Cir. 1983) (noting that the Fifth Circuit had previously upheld the admission of expert testimony when the "reliance on third parties was limited and shown to be reasonable."); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Smith Tank & Steel, Inc.*, No. 3:11-CV-00830, 2014 WL 5794952, at *4 (M.D. La. Nov. 6, 2014) ("The modern view recognizes that experts often rely on facts and data supplied by third parties . . . This includes relying on analyses performed by one's assistants." (citations omitted)). *See also* Fed. R. Evid. 703 advisory committee's notes to 1972 proposed rules ("Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.").

[94] *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978).

[95] *See* Rec. Doc. 23-9 at 9 (David Scruton's Curriculum Vitae).

[96] *See* Rec. Doc. 23-8 at 1.

[97] *Id.*

[98] Rec. Doc. 23-1 at 8.

is not convinced that Gee, with a significant marine and maritime background,[99] was so unqualified

to physically observe and inspect the vessels on June 1, 2016 as to merit excluding every opinion

contained in the expert report, or that Scruton could not be made aware of the facts or data gathered

by Gee and consider them alongside the other thirteen sources of information to form his own

opinions. Thus, the Court finds there are sufficient grounds to establish the reliability of the report

and of Scruton's own opinions, regardless of whether Gee could separately qualify as a "marine

safety" expert. This holding is consistent with the reasoning the Court finds persuasive in *Suazo v.*

*Atl. Sounding Co.*, where another judge in the Eastern District of Louisiana rejected a similar

argument against expert testimony by David Scruton on the grounds that such an objection should

be handled through effective cross-examination.[100]

The Court agrees with Defendants that Cormier's objection to Scruton's testimony is

precisely the sort that is best addressed through "[v]igorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof."[101] A court's role as a gatekeeper

does not replace the traditional adversary system,[102] and "[a]s a general rule, questions relating to

the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather

than its admissibility."[103] Because cross-examination would effectively serve Cormier's ultimate

---

[99] Defendants represent that "Gee has a degree in marine engineering, is a licensed chief engineer for motor and steam vessels, and an ABS qualified external auditor. In addition to his 13 years experience as a vessel officer on seagoing vessels, Gee also has five years experience as a marine engineering manager, and over ten years as a marine surveyor." Rec. Doc. 26 at 2.

[100] 2009 WL 3254446, at *2 (E.D. La. Mar. 10, 2009) (Vance, J.) (holding that it was not necessary for Scruton to personally inspect a piece of vessel equipment to offer expert opinion and testimony).

[101] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[102] *See id.*

[103] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

purposes, and because questions relating to the bases of an expert's opinion generally go to the weight, rather than the admissibility, of an expert opinion,[104] the Court herein denies Cormier's motion to fully exclude the opinions contained in the expert report and the entirety of Scruton's testimony.

Next, Cormier argues that, in the alternative, the Court should limit Scruton's testimony.[105] Defendants state they are "not necessarily opposed" to limitations on Scruton and the opinions listed in the expert report, but do not indicate the limitations to which they agree.[106] Rather, Defendants provide citations for three Eastern District of Louisiana cases where judges opted for limitations on an expert's testimony instead of outright exclusions.[107] Here, Cormier seeks to exclude Scruton from providing evidence, testimony, comments, and opinions on ten subjects discussed in the expert report.[108] As stated *supra,* Cormier argues that Scruton's testimony regarding Defendants' expert report should be limited to exclude opinion number one;[109] opinion

---

[104] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987)).

[105] Rec. Doc. 23-1 at 10–19.

[106] Rec. Doc. 26 at 5.

[107] *Id*. (Citing *Johnson v. Cenac Towing*, 2008 WL 5499506 (E.D. La. Nov. 21, 2006) (Vance, J.); *Henson v. Odyssea Vessels, Inc.*, 2008 WL 449726 (Feb 15, 2008) (Barbier, J.); *Suazo v. Atlantic Sounding Co.*, 2009 WL 3254446 (E.D. La. Mar. 10, 2009) (Vance, J.)).

[108] Rec. Doc. 23-1 at 10–19.

[109] Opinion number one states: "We are of the opinion that Mr. Cormier was an experienced deckhand, who should have been able to safely embark and disembark between the flatboat and M&M 102." Rec. Doc. 23-8 at 11. Cormier argues these factual issues simply mirror Cormier's deposition and are within the common experience and knowledge of the factfinder. Rec. Doc. 23-1 at 15–16 (citing *In re Midland Enterprises, Inc.*, No. CIV.A. 00-3750, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.) (stating that the expert testimony "will not bring to the jury anything more than the lawyers can offer in argument and such opinions should be excluded")).

number three;[110] opinion number four;[111] opinion number six;[112] and opinion number seven[113] of the expert report.[114] More specifically, Cormier requests this Court exclude any evidence, testimony, comments, and opinions offered by Scruton as a "marine safety" expert on (1) the credibility and veracity of the testimony of Cormier or any of his witnesses; (2) Cormier's pre-employment applications and the employee hiring practices of M&M Wireline; (3) Cormier's medical condition, treatment, and history; (4) the causation of Cormier's injuries; (5) Cormier's health insurance availability; (6) the proximity of Cormier's house to a hospital; (7) Cormier's alleged meeting with a lawyer before going to a doctor; (8) Cormier's work history and training; (9) the inspection, measurements taken, and data collected during the June 1, 2016, physical inspection of the two vessels that Scruton did not attend; and (10) whether Cormier attempted to

---

[110] Opinion number three states: "We are of the opinion that Mr. Cormier did not truthfully complete the M&M Wireline Services employment application form and General Physical Form, and thus denied M&M Wireline Services and his direct supervisor the relevant information they needed to ensure that Mr. Cormier was assigned the appropriate tasks when working onboard." Rec. Doc. 23-8 at 11. Cormier alleges this weighs the credibility and veracity of Cormier's testimony and is outside the scope of Scruton's expertise. Rec. Doc. 23-1 at 11.

[111] Opinion number four states: "We are also of the opinion that although Mr. Cormier testified that his back injuries occurred during the incident, such allegations appear somewhat questionable based on the fact that he continued to work for three and a half months after the alleged incident. During this time period he performed the same strenuous duties that he had before." Rec. Doc. 23-8 at 11. Cormier alleges that opining on Cormier's medical background falls outside the scope of Scruton's expertise. Rec. Doc. 23-1 at 12.

[112] Opinion number six states: "We are of the opinion that the vertical height difference between M&M 102 and the flatboat was to the approximate order of 12 to 14 inches, and that Mr. Cormier could have safely stepped between the vessels without difficulty, had he waited to transfer until the bow of the flatboat was pushed up against the barge." Rec. Doc. 23-8 at 12. Cormier alleges that Scruton did not personally inspect the vessels, and thus cannot testify as to any measurements taken or data collected, and that this weighs the credibility of witnesses by disregarding testimony to the contrary. Rec. Doc. 23-1 at 17.

[113] Opinion number seven states: "We are of the opinion that the incident is consistent with having occurred as testified by Mr. Osterholm when Mr. Cormier unexpectedly jumped from the flatboat to M&M 102, , [sic] as confirmed in the contemporaneous Incident Report signed by Mr. Cormier himself." Rec. Doc. 23-8 at 12. Cormier alleges this weighs the credibility and veracity of witness testimony. Rec. Doc. 23-1 at 13–14.

[114] Rec. Doc. 23-8 at 11–12.

18

step between the Jon Boat to the M/V M&M 102 barge before the Jon Boat was butted and/or pushed up against the barge.[115]

Cormier asserts that, *inter alia*, limitations are appropriate on three broad grounds.[116] He contends that Scruton may not offer opinions that fall outside the ambit of a "marine safety" expert, encroach on the factfinder's role of weighing the credibility of witness testimony, or are within the common knowledge or experience of the factfinders.[117]At various times, Cormier also asserts that these statements are "irrelevant, speculative, unfairly prejudicial, [and] misleading."[118] The Court will discuss each of Cormier's arguments for limitation in turn.

First, Cormier asserts than an expert witness may not offer testimony that lies outside of his field of expertise.[119] The Fifth Circuit firmly stated in *Goodman v. Harris Cty.* that an expert witness may not "go beyond the scope of his expertise in giving his opinion."[120] As noted in *Daubert*, Rule 702 relaxes the ordinary requirement that witnesses have firsthand knowledge on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."[121] Likewise, as another judge in the Eastern District of Louisiana noted, statements outside the expertise of a witness would amount to little more than speculation or

---

[115] *Id*. at 18–19; *see also id*. at 10–18 (explaining in detail why each of Scruton's challenged opinions should be limited).

[116] *Id*.

[117] Rec. Doc. 23-1 at 10–19.

[118] *Id*. at 5–6.

[119] Rec. Doc. 23-1 at 11, 13.

[120] 571 F.3d 388, 399 (5th Cir. 2009) ("Nor, may an expert go beyond the scope of his expertise in giving his opinion.").

[121] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

hearsay.[122]

Here, Defendants represent that David Scruton plans to testify at trial as a "marine safety" expert.[123] Accordingly, the Court agrees with Cormier that Scruton may not offer expert testimony that lies outside of this field of expertise. The Court finds that Scruton may not offer testimony on Cormier's completion of pre-employment applications, pre-employment physical assessments, and the employee hiring practices of M&M Wireline, as Scruton is not offered as an expert in employment-related fields.[124] Scruton also may not testify as to Cormier's medical condition, medical examinations, medical treatment, diagnosis, prognosis, medical records, and medical history treatment, as well as the causation of Cormier's injuries, as Scruton is not a medical expert qualified to offer expert opinions in these areas.[125] This includes Scruton's opinion number four of the expert report, which remarks on Cormier's medical condition and the plausibility of the assertion that Cormier's injuries were caused by the alleged incident.[126]

Second, Cormier asserts that Scruton may not offer testimony or opinions regarding the veracity or credibility of witnesses. The Fifth Circuit and several lower courts have made clear that expert testimony may not usurp the factfinder's inherent authority to make credibility

---

[122] *Henson v. Odyssea Vessels, Inc.*, No. CIV.A. 07-613, 2008 WL 449726, at *2–3 (E.D. La. Feb. 15, 2008) (Barbier, J.).

[123] Rec. Doc. 16 at 1.

[124] Thus, the Court grants Cormier's request for relief under Section V(3)(b) of Cormier's motion. *See* Rec. Doc. 23-1 at 18.

[125] Thus, the Court grants Cormier's request for relief under Section V(3)(c) and (d) of Cormier's motion. *Id.*

[126] Opinion number four states: "We are also of the opinion that although Mr. Cormier testified that his back injuries occurred during the incident, such allegations appear somewhat questionable based on the fact that he continued to work for three and a half months after the alleged incident. During this time period he performed the same strenuous duties that he had before." Rec. Doc. 23-8 at 11.

determinations.[127] In a similar case involving Scruton as an expert witness in the Eastern District of Louisiana, another judge explicitly held that Scruton "may not comment on the veracity or credibility of [the plaintiff]."[128] Here, Scruton is likewise excluded from offering testimony as to the relative credibility and veracity of Cormier and his witnesses.[129] Thus, the Court grants Cormier's request to exclude such testimony and opinions "definitively stating" that Cormier attempted to cross from the flatboat to the M&M 102 barge before the flatboat was butted and/or pushed against the barge.[130] As Scruton was not present during the incident on November 30, 2014, any such statements involve weighing the veracity and credibility of Cormier's version of events against the testimony provided by Defendants' witnesses, impermissibly infringing on the role of the factfinder, and amounts to little more than "mere speculation, or hearsay."[131] This also includes Scruton's opinion number 3 of the expert report, which opines that Cormier "did not truthfully complete" his pre-employment forms,[132]  and opinion number four of the expert report, which

---

[127] *See Skidmore v. Precision Printing & Pkg., Inc.,* 188 F.3d 606, 618 (5th Cir. 1999) (stating that "[c]redibility determinations, of course, fall within the jury's province" in relation to a challenge to expert testimony); *Singleton v. Ben Bridge Jeweler, Inc.*, 2009 WL 3698440, at *3 (S.D. Tex. Jan. 27, 2009) (finding that the expert's opinion impermissibly invaded the province of the jury to assess the credibility of witnesses); *Henson v. Odyssea Vessels, Inc.*, 2008 WL 449726, at *2 (E.D. La. Feb. 15, 2008) (stating that the plaintiff was "certainly correct that determining the credibility of witnesses is the province of a jury" (citing *United States v. Deville*, 278 F.3d 500, 506 (5th Cir.2002); *United States v. Rasco*, 123 F.3d 222, 229 (5th Cir. 1997)).

[128] *Henson*, 2008 WL 449726, at *2.

[129] Thus, the Court grants Cormier's request for relief under Section V(3)(a) of Cormier's motion. *See* Rec. Doc. 23-1 at 18.

[130] Thus, the Court grants Cormier's request for relief under Section V(3)(j) of Cormier's motion. *See id*. at 19.

[131] *Henson*, 2008 WL 449726, at *2.

[132] Opinion number three states: "We are of the opinion that Mr. Cormier did not truthfully complete the M&M Wireline Services employment application form and General Physical Form, and thus denied M&M Wireline Services and his direct supervisor the relevant information they needed to ensure that Mr. Cormier was assigned the appropriate tasks when working onboard." Rec. Doc. 23-8 at 11.

states that Cormier's allegations that the incident caused his injuries "appear somewhat questionable."[133]

However, while the Court agrees with Cormier that testimony "definitively stating" that Cormier attempted to cross from the Jon Boat to the M&M 102 barge before the flatboat was butted and/or pushed against the barge should be excluded, the Court is not convinced by Cormier's arguments that the entirety of Scruton's opinion number seven should be excluded as well.[134] Cormier argues that rendering an opinion about the consistency of the incident with Defendants' version of events involves weighing the credibility and opining on the veracity of witness testimony. However, merely stating, as a "marine safety" expert, that an incident "is *consistent* with having occurred as testified by" Defendants' witness does not necessarily infringe on the inherent authority of the factfinder.[135] Rather, insofar as Scruton avoids weighing the relative credibility and veracity of Cormier and his witnesses, the Court finds that it is not appropriate at this time to exclude Scruton from testifying about whether a version of events is consistent with his findings as an expert witness. Therefore, it will deny Cormier's motion to exclude opinion number seven in its entirety.

Third and finally, Cormier argues that an expert witness may not offer opinions or testimony that are within the common knowledge or experience of the factfinders.[136] The Fifth

---

[133] "We are also of the opinion that although Mr. Cormier testified that his back injuries occurred during the incident, such allegations appear somewhat questionable . . . ." Rec. Doc. 23-8 at 11.

[134] Opinion number seven states: "We are of the opinion that the incident is consistent with having occurred as testified by Mr. Osterholm when Mr. Cormier unexpectedly jumped from the flatboat to M&M 102, , [sic] as confirmed in the contemporaneous Incident Report signed by Mr. Cormier himself." Rec. Doc. 23-8 at 12.

[135] *Id*. (Emphasis added).

[136] *See* Rec. Doc. 14–15.

Circuit has held that expert testimony is unnecessary when the evidence presented by the expert is merely common knowledge, which the Fifth Circuit has likened to "the experiences of a layman."[137] As the advisory committee notes for Federal Rules of Evidence 702 states, courts should consider "the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently" the issues before the factfinder "without enlightenment from those having a specialized understanding of the subject."[138] Thus, in *Peters v. Five Star Marine Service*, the Fifth Circuit affirmed the exclusion of expert testimony on the grounds that the jury could analyze the question at issue "by using only their common experience and knowledge."[139] Likewise, in *In re Midland Enterprises, Inc.*, another section of the Eastern District of Louisiana held that the expert testimony in that case "will not bring to the jury anything more than the lawyers can offer in argument and such opinions should be excluded."[140]

On these grounds, the Court finds that testimony regarding the availability of Cormier's health insurance, the proximity of Cormier's house to a hospital, and Cormier's alleged meeting with a lawyer before going to a doctor all can be analyzed by factfinders relying on their common experience and knowledge without the assistance of a "marine safety" expert.[141] Therefore, these statements are excluded.[142] Cormier also seeks to exclude testimony regarding the work history

---

[137] *Woods v. U.S. Gov't*, 2011 WL 857007, at *2 (5th Cir. 2011) (citing *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)).

[138] Fed. R. Evid. 702 advisory committee's notes to the 1972 proposed rules.

[139] 898 F.2d 448, 449 (5th Cir. 1990).

[140] 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.).

[141] Cormier also argues that the probative value of these comments are substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403, and that these comments are beyond the scope of Scruton's expertise. *See* Rec. Doc. 23-1 at 14. However, as the Court concludes that these comments are within the common knowledge of the factfinder, it will not address Cormier's alternate arguments.

[142] Thus, the Court grants Cormier's request for relief under Section V(3)(e)–(g) of Cormier's motion. *See*

and training of Beaux Cormier. The Court agrees with Cormier that a factfinder could consider evidence on Cormier's work history by using only his or her common experience as a layperson, and expert testimony on the subject would not assist the factfinders. [143] Therefore, opinions in the expert report regarding Cormier's previous employment are excluded. [144]

However, this Court denies the part of Cormier's request regarding Cormier's training. [145] At this time, the Court is not convinced that the extent and quality of training provided by the Defendants is within the common experience of a layperson, and Cormier does not raise additional arguments to exclude references to his training. Rather, Scruton's expert testimony here may aid the factfinder in determining whether Defendants are liable to Cormier for their negligent actions as alleged, particularly in light of Scruton's allegations that Defendants failed to properly train its employees or exercise reasonable care for the safety of all persons on the vessels. [146]

Likewise, the Court will also deny Cormier's request to exclude opinion number one of the expert report, insofar as it states an opinion that an experienced deckhand could "safely embark and disembark" between the vessels. [147] At this time, the Court is not convinced that it is within the common experience and knowledge of the factfinder to assess whether, under the conditions, procedures, practices, and safety precautions that existed at the time of the incident, an employee

Rec. Doc. 23-1 at 18.

[143] Thus, the Court grants part of Cormier's request for relief under Section V(3)(h) of Cormier's motion. *See* Rec. Doc. 23-1 at 18.

[144] *See* Rec. Doc. 23-8 at 5.

[145] Thus, the Court denies Cormier's request for relief under Section V(3)(i) of Cormier's motion. *See* Rec. Doc. 23-1 at 19

[146] *See* Rec. Doc. 6 at 13–14.

[147] Opinion number one states: "We are of the opinion that Mr. Cormier was an experienced deckhand, who should have been able to safely embark and disembark between the flatboat and M&M 102." Rec. Doc. 23-8 at 11.

could have safely traversed between the two vessels. As such, it is premature to determine whether the factfinder will be aided by Scruton's expert opinions on this matter. Therefore, the Court will grant in part Cormier's motion to strike opinion number one of the expert report with respect to references to his past work experience, and deny in part the motion to strike opinion number one with respect to Scruton's opinion on whether an employee such as Cormier should have been able to "safely embark and disembark" between the two vessels.[148]

Finally, this Court will also deny Cormier's tenth request involving opinion number six of the expert report,[149] *i.e.* that Scruton should be excluded from testifying about the measurements and conditions of the flatboat and the M&M 102 barge.[150] According to the expert report, Scruton considered a variety of sources when formulating his opinions, including photographs of the two vessels, four depositions, a "Condition and Valuation survey report" of the M&M 102 barge, an accident report, and the data gathered by Martin Gee during his physical inspection.[151] As stated *supra*, the Supreme Court in *Daubert* and the Fifth Circuit in *Cromwell* both held that experts are permitted to assume underlying facts and offer opinions not based on firsthand knowledge or observation.[152] Likewise, Federal Rule of Evidence 703 allows experts to base their opinions on

---

[148] *See* Rec. Doc. 23-1 at 15; Rec. Doc. 23-8 at 12.

[149] Opinion number six states: "We are of the opinion that the vertical height difference between M&M 102 and the flatboat was to the approximate order of 12 to 14 inches, and that Mr. Cormier could have safely stepped between the vessels without difficulty, had he waited to transfer until the bow of the flatboat was pushed up against the barge." Rec. Doc. 23-8 at 12.

[150] Thus, the Court denies Cormier's request for relief under Section V(3)(i) of Cormier's motion. *See* Rec. Doc. 23-1 at 19.

[151] *See* Rec. Doc. 23-8 at 3–4.

[152] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 692 (1993) (holding that an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."); *Cromwell v. Wal-Mart Stores, Inc.*, 46 Fed. Appx. 733, at *2 (5th Cir. 2002) (quotations omitted) (stating that "experts are permitted to assume the underlying facts that form the basis for their opinion.").

facts or data "that the expert has been made aware of," provided that "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[153] Thus, the Court holds that Scruton, as a "marine safety" expert, may offer opinions on whether an individually could safely cross between the two vessels based on the measurements taken and data collected during the June 1, 2016 physical inspection of the two vessels, as well as the supporting documentation listed in the expert report.[154]

## IV. Conclusion

Accordingly, this Court denies Cormier's motion to fully exclude Scruton and every opinion contained within the expert report, but holds that Scruton, as a "marine safety" expert, may not testify with respect to statements involving (1) the credibility and veracity of the testimony of Cormier or any of his witnesses; (2) Cormier's pre-employment applications, pre-employment physical assessments, and M&M employee hiring practices; (3) Cormier's medical condition, examinations, treatment, diagnosis, prognosis, and medical records and history; (4) the causation of Cormier's injuries; (5) the alleged availability of health insurance; (6) the alleged proximity of Cormier's house to a hospital; (7) Cormier's alleged meeting with a lawyer in connection with this matter; (8) Cormier's work history; and (9) testimony "definitively stating" that Cormier attempted to step between the vessels before the flatboat was butted and/or pushed up against the M/V M&M 102 barge.[155] This encompasses statements asserted in part of opinion number one and the entirety of opinion number three and opinion number four of the expert report.

---

[153] Fed. R. Evid. 703.

[154] Thus, the Court denies Cormier's request for relief under Section V(3)(i) of Cormier's motion. *See* Rec. Doc. 23-1 at 19.

[155] *See* Rec. Doc. 23-1 at 18–19.

However, at this time, the Court will deny Cormier's motion to exclude testimony regarding Cormier's training or the condition and measurements of the vessels at issue in this case. This includes part of opinion number one, and the entirety of opinion number six and opinion number seven of the expert report.

For the reasons stated above,

**IT IS HEREBY ORDERED** that Cormier's "Motion in Limine to Exclude the Expert Report and Prospective Testimony and/or Data of David Scruton and Martin Gee, or in the Alternative, to Limit Certain Prospective Testimony of David Scruton"[156] is **GRANTED IN PART** and **DENIED IN PART.**

**NEW ORLEANS, LOUISIANA**, this __7th___ day of September, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[156] Rec. Doc. 23.