## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IN THE MATTER OF M&M WIRELINE & OFFSHORE SERVICES, LLC**

**CIVIL ACTION**

**NO. 15-4999**
**C/W NO. 15-5338**

**SECTION: "G"(5)**

## ORDER

Before the Court is Plaintiff Beaux Cormier's "Motion to in Limine to Exclude Certain Anticipated Testimony of Martin Quiram."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiff Beaux Cormier ("Cormier") alleges that he was employed by Defendant M&M Wireline & Offshore Services, LLC ("M&M Wireline") as a deckhand on the M/V M&M 102.[2] Cormier states that on November 30, 2014, he was transported from a platform in the Grand Bay Field to the nearby M/V M&M 102 by a "Jon Boat" owned and/or operated by Defendant Saratoga Resources, Inc. ("Saratoga").[3] According to Cormier, the operator of the Jon Boat positioned the boat so that the front of the Jon Boat was near and/or pushed up against the

---

[1] Rec. Doc. 79.

[2] Rec. Doc. 6 at 10.

[3] *Id.* at 11.

1

side of the M/V M&M 102.[4] When Cormier attempted to step up onto the deck, he alleges that the Jon Boat backed away from the M/V M&M 102, requiring Cormier to jump back onto the Jon Boat.[5] As a result, Cormier avers that he lost his balance and landed partially on the Jon Boat and partially in the water, causing the injuries at issue in this litigation.[6] Cormier contends that the Jon Boat was not connected or secured to the M/V M&M 102 in any way, nor were there other mechanisms in place to allow for safe ingress and egress to the M/V M&M 102.[7] Cormier alleges that at the time of his accident, the M/V M&M 102 was a vessel owned and operated by M&M Wireline and engaged in operations by Saratoga.[8] Cormier further alleges that Defendants M&M Wireline and Saratoga (collectively, "Defendants") are liable to him for the injuries caused by their negligent acts and for failing to provide seaworthy vessels.[9] Defendants argue that any injury Cormier sustained resulted solely from Cormier's own fault, and that Cormier's alleged back injury pre-existed the incident at issue in this litigation.[10]

### B.     *Procedural Background*

On October 6, 2015, M&M Wireline filed a complaint for exoneration or limitation of liability pursuant to Rule F(2) of the Supplemental Rules for Admiralty or Maritime Claims and

---

[4] *Id.*

[5] *Id.* at 11–12.

[6] *Id.*

[7] *Id.* at 10.

[8] *Id.*

[9] *Id.* at 12–14.

[10] Rec. Doc. 15 at 5–6.

Asset Forfeiture Actions.[11] M&M Wireline filed an amended complaint on October 21, 2015.[12] Cormier filed his answer to M&M Wireline's complaint for limitation of liability and his own claims on November 25, 2015.[13] On September 15, 2016, Cormier filed the instant motion seeking to exclude the expected testimony of Defendants' witness, Martin Quiram.[14] On September 21, 2016, Defendants opposed the motion.[15]

## II. Parties' Arguments

### A.   *Cormier's Arguments in Support of Motion to Exclude*

In his motion, Cormier moves to exclude the anticipated lay testimony of Martin Quiram ("Quiram"), owner of M&M Wireline, regarding: (1) the current pay and work schedule of current M&M Wireline employees; and (2) the alleged downturn in the oil and gas industry in Southeast Louisiana.[16] Cormier asserts that in the parties' Proposed Pretrial Order, Defendants represent that Quiram will testify about "plaintiff's job duties, his rate of pay, and *the downturn in the oil and gas industry in South Louisiana*."[17] Cormier points out that Defendants' economic expert witness, J. Stuart Wood, states that he gathered information from Quiram on the current pay of his employees and assumed a twenty-five percent reduction in wages based on the alleged downturn

---

[11] Rec. Doc. 1.

[12] Rec. Doc. 4.

[13] Rec. Doc. 6.

[14] Rec. Doc. 79.

[15] Rec. Doc. 88.

[16] Rec. Doc. 79-1 at 9.

[17] *Id.* at 2–3 (citing Rec. Doc. 61 at 38) (emphasis added).

in the oil and gas industry.[18] Cormier argues that Defendants will reference the effects of the "downturn in the oil and gas industry" on the pay and work schedule of current M&M Wireline employees to erroneously minimize Cormier's loss of earning capacity damages.[19]

First, Cormier asserts that M&M Wireline seeks to apply an incorrect standard to calculate Cormier's loss of earning capacity.[20] Citing an Eastern District of Louisiana case and a Louisiana Supreme Court case, Cormier argues that damages for loss of earning capacity are determined by asking what a plaintiff was capable of making in the competitive labor market "but for" the accident.[21] Thus, according to Cormier, what he would have made at M&M Wireline in the future based on the pay and work schedule of current M&M employees is irrelevant.[22] If M&M Wireline's argument was correct, Cormier avers, then a plaintiff would be unable to obtain loss of earning capacity damages if its company shut down operations entirely; Cormier argues that this would defy logic and existing case law.[23] Cormier contends that such testimony from Quiram is irrelevant, and any probative value it may have would be substantially outweighed by confusion of the issues by the factfinder.[24] Thus, Cormier asserts that such testimony should be excluded under Federal Rules of Evidence 401 and 403.[25]

---

[18] *Id.* at 3.

[19] *Id.* at 3–4.

[20] *Id.* at 4.

[21] *Id.* at 2, 4 (quoting *Thompson v. Amerada Hess Corp.*, No. 96-3265, 1998 WL 274260, at *5 (E.D. La. May 26, 1998) (Vance, J.) (quoting *Folse v. Fakouri,* 371 So.2d 1120 (La. 1979))).

[22] *Id.* at 5–6.

[23] *Id.* at 6.

[24] *Id.* at 7.

[25] *Id.*

Second, Cormier argues that Quiram is not offered as an expert, and thus is not qualified to offer opinions on his "perception" regarding a downturn in the oil and gas industry in South Louisiana.[26] Cormier points out that Quiram is not an economist or an expert in forecasting trends in the price of oil and gas or offered as an expert, and that testimony regarding changing market conditions in a specific oil and gas industry requires specialized knowledge that only a qualified expert can provide under Federal Rule of Evidence 702.[27]  Cormier asserts that, because Quiram is not qualified, and because such opinions would not be helpful in understanding his testimony or determining a fact in issue in this case, it should be excluded under Federal Rule of Evidence 701.[28]

**B.      *Defendants' Arguments in Opposition to Motion to Exclude***

Defendants oppose Cormier's motion to exclude certain anticipated testimony of Martin Quiram.[29] Defendants assert that officers of a corporation may testify regarding industry practices, even if they do not qualify as an expert.[30] Citing a Central District of California case, Defendants argue that it is well settled that a lay witness may testify on "opinions based on a combination of their specialized knowledge obtained through their vocation."[31]

Here, Defendants contend that Quiram is only offered as a lay witness, and thus he may testify as to his opinions, perceptions, and personal experiences regarding the operations of his

---

[26] *Id.* at 7–8.

[27] *Id.* at 8.

[28] *Id.*

[29] Rec. Doc. 88 at 1.

[30] *Id.* at 3 (citing *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003)).

[31] *Id.* (citing *L.A. Times Commc'n, LLC v. Dept. of the Army*, 442 F.Supp.2d 880, 887 (C.D. Cal. 2006)).

company and the local oil and gas industry.[32] Defendants argue that, because of Quiram's role as sole owner of M&M Wireline, he has personal knowledge on matters such as the rate of pay for his employees and the effect of certain factors, such as the downturn in the oil and gas industry, on rates of pay.[33] Furthermore, Defendants aver that Quiram has worked in the oilfield services industry for at least eleven years and has personally observed how the "health" of this industry affects his business.[34] Therefore, Defendants aver that Quiram's anticipated testimony is based on his own perceptions and personal knowledge, and is thus admissible under Federal Rule of Evidence 701.[35] Defendants state that concerns about the foundation for this testimony should be addressed during cross examination.[36] Defendants further assert that testimony regarding a downturn in that industry is relevant because it would affect how much work M&M Wireline receives, what rates M&M Wireline can charge, and, in turn, how many employees it can hire and what it can pay those employees.[37]

### III. Law and Analysis

**A.**   ***Legal Standard for Rules 401 and 403 of the Federal Rules of Evidence***

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pursuant to Federal Rule of Evidence 403, "the court may

---

[32] *Id.* at 1–2.

[33] *Id.* at 4.

[34] *Id.* at 5.

[35] *Id.* at 2–3 (citing *DIJO, Inc v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003)).

[36] *Id.*

[37] *Id.*

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[38]

**B.    *Legal Standard for Rules 701 and 702 of the Federal Rules of Evidence***

Pursuant to Federal Rule of Evidence 701, a lay witness may offer opinion testimony if the testimony is: (1) rationally based on the witness's perception; (2) helpful in understanding the witness's testimony or in determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge. "The distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"[39] As the Fifth Circuit has made clear, "*any* part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701."[40]

**C.    *Analysis***

In this motion, Cormier argues that the Court should preclude Martin Quiram, the owner of M&M Wireline, from offering lay testimony regarding: (1) the current pay and work schedule of current M&M Wireline employees; and (2) the alleged downturn in the oil and gas industry in

---

[38] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[39] *United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012); *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992))).

[40] *Yanez Sosa*, 513 F.3d at 200 (citing *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)) (emphasis in original).

South Louisiana.[41] Cormier avers that loss of earning capacity damages are calculated by considering what a plaintiff was capable of making in the competitive labor market "but for" the accident.[42] Thus, according to Cormier, what he would have made at M&M Wireline in the future based on the pay and work schedule of current M&M employees or in light of changes in the market conditions of this specific industry is irrelevant and would confuse the factfinder.[43] Cormier further avers that Quiram, who is not offered as an expert witness, is not qualified to testify about his "perception" regarding a downturn in the oil and gas industry in South Louisiana under Federal Rules of Evidence 701 and 702.[44]

In response, Defendants aver that testimony regarding the current rate of pay for M&M Wireline employees and the effects of a downturn in this industry is based on Quiram's own perceptions and personal knowledge as the owner of M&M Wireline and as someone who has been in the oilfield services industry for at least eleven years.[45]  Defendants assert that Quiriam's opinions are rationally related to his own observations, and thus are admissible as lay testimony pursuant to Federal Rule of Evidence 701.[46] Defendants do not address Cormier's arguments regarding the relevancy of such testimony to loss of earning capacity damages.

Under the Jones Act and General Maritime Law, Cormier is entitled to damages for future loss of earning capacity caused by Defendants' negligence and/or the unseaworthiness of the

---

[41] Rec. Doc. 79-1 at 9.

[42] *Id.* at 2, 4 (quoting *Thompson v. Amerada Hess Corp.*, No. 96-3265, 1998 WL 274260, at *5 (E.D. La. May 26, 1998) (Vance, J.) (quoting *Folse v. Fakouri,* 371 So.2d 1120 (La. 1979))).

[43] *Id.* at 5–7.

[44] *Id.* at 7–8.

[45] Rec. Doc. 88 at 1, 5.

[46] *Id.* at 5.

vessel.[47] Impaired earning capacity damages are "intended to compensate the worker for the diminution in that stream of income" based on a worker's partial or total disability.[48] There is no certain way of calculating the length and extent of a plaintiff's loss of future earnings.[49] In general, courts typically look to a wide range of factors to determine loss of earning capacity, including a plaintiff's pre-injury physical condition and earning capacity,[50] the extent to which plaintiff's post-injury condition disadvantages him or her in the work force,[51] actual post-accident wage losses,[52] potential future wage increases,[53] and the extent of the plaintiff's remaining working life,[54] while also adjusting for factors such as their present value and applicable taxes.[55] Loss of earning

---

[47] *Michel v. Total Transp., Inc.*, 957 F.2d 186, 192 (5th Cir. 1992) (affirming district court's award for lost future earnings and earning capacity); *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 477 (E.D. La. 2008) (Fallon, J.) (citing *Nichols v. Weeks Marine, Inc.*, 513 F.Supp.2d 627, 637 (E.D.La. 2007) (Fallon, J.); *Johnson v. Cenac Towing, Inc.*, 468 F.Supp.2d 815, 835 (E.D.La. 2006) (Vance, J.)).

[48] *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533 (1983); *see also* 1 Admiralty & Mar. Law § 6-18 (5th ed.).

[49] *Jones*, 462 U.S. at 533; 1 Admiralty & Mar. Law § 6-18 (5th ed.).

[50] *Levine v. Zapata Protein (USA), Inc.*, 961 F. Supp. 942, 945–46 (E.D. La. 1996).

[51] *See Barocco v. Ennis Inc. of Colorado*, No. 02-1450, 2003 WL 1342973, at *1 (E.D. La. Mar. 19, 2003) (Vance, J.), *aff'd sub nom. Barocco v. Ennis Inc.*, 100 F. App'x 965 (5th Cir. 2004).

[52] *Blaauw v. Superior Offshore Int'l, LLC*, No. 06-1380, 2008 WL 4224808, at *14 (W.D. La. Sept. 10, 2008) (citing Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 5-15.1 (4th ed. 2004); *Johnson v. Cenac Towing, Inc.* 468 F.Supp.2d 815, 834 (E.D.La. 2006)).

[53] *Jones*, 462 U.S. at 533.

[54] *Barocco*, 2003 WL 1342973, at *1.

[55] *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478–79 (5th Cir. 1984); 1 Admiralty & Mar. Law § 6-18 (5th ed.); *see also Michel v. Total Transp., Inc.*, 957 F.2d 186, 192 (5th Cir. 1992); *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983) ("The calculation of damages suffered either by a person whose personal injuries will result in extended future disability or by the representatives of a deceased person involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value."); 2 American Law of Torts § 8:27 ("Relevant to the issue are such factors as: the nature and extent of an injury victim's employment, or business or calling, or profession; his or her experience, skill and ability in the employment, occupation or profession; and the various losses undergone from diminution of capacity to follow such trade, business or profession as a consequence of injury sustained.") (citations omitted)).

capacity must be estimated based on the injured person's ability to earn money, and not on what he actually earned before the injury.[56]

Importantly, loss of earning capacity is not limited to what a plaintiff would have earned at the defendant's company, as courts may consider whether a plaintiff could have been able to get a job in a different line of work but for the injury and whether the plaintiff could be re-trained for alternative employment.[57] For example, in *Fleming v. American Export Isbrandtsen Lines, Inc.*, the Second Circuit found that a defendant's evidence that there were no carpenter jobs available on the defendant's ships even to employees without injuries was insufficient to set aside a jury verdict on the issue of impaired future earning capacity.[58] The court held that, "[e]ven assuming that no carpenter jobs were available, in awarding damages for loss of future earning capacity the jury could properly have considered whether plaintiff might have been able to get a job in a different line of work but for the injury."[59] Likewise, as the Fifth Circuit has previously held, courts are not required "to take into account every bit of potentially relevant evidence concerning the tomorrows of a lifetime."[60] In determining an appropriate damages award, courts must not allow "the average accident trial" to be converted "into a graduate seminar on economic forecasting."[61] Thus, this Court notes that testimony regarding the current pay and work schedule of a specific

---

[56] *See Jones*, 462 U.S. at 533; *Thompson v. Amerada Hess Corp.*, No. 96-3265, 1998 WL 274260, at *5 (E.D. La. May 26, 1998) (Vance, J.); *see also Barocco*, 2003 WL 1342973, at *1.

[57] *See Fleming v. Am. Exp. Isbrandtsen Lines, Inc.*, 451 F.2d 1329, 1333 (2d Cir. 1971) (citing *Wiles v. New York, Chicago and St. Louis R. R.*, 283 F.2d 328, 332 (3rd Cir. 1960)); *Saleeby v. Kingsway Tankers, Inc.*, 531 F. Supp. 879, 890 (S.D.N.Y. 1981); 1 Admiralty & Mar. Law § 6-18 (5th ed.).

[58] 451 F.2d at 1332–33.

[59] *Jones*, 462 U.S. at 533.

[60] *Culver v. Slater Boat Co.*, 722 F.2d 114, 123 (5th Cir. 1983).

[61] *Id.* (citing *Jones*, 462 U.S. at 523).

employer and market changes in a specific subsection of one industry may be of little relevance, as a plaintiff's loss of earning capacity is not narrowly determined by the wages he would have earned working for the same employer.

However, just as evidence of increases in wages and productivity of workers over time may be considered by a factfinder,[62] the Court notes that testimony regarding alleged decreases in wages across an industry may also be relevant. That is, Defendants' testimony may be relevant to the extent that it shows that even if Cormier was not injured, his earning capacity would have been reduced by subsequent market changes in the oil and gas industry. As the Fifth Circuit has previously held, in determining loss in earning capacity, courts "cannot ignore the fact that long term economic conditions may change or that economic forecasting may become more certain."[63] "In making awards to compensate injured plaintiffs . . . for loss of future earnings . . . fact-finders must attempt, in some degree, to gauge future events."[64] Moreover, the Fifth Circuit has previously upheld a district court's refusal to strike testimony on the depressed condition of the oil and gas industry offered in the context of loss of future wages damages.[65] The Fifth Circuit held that such testimony "was relevant to the jury's determination of whether [the plaintiff] could have continued as a maritime worker in the absence of his accident."[66]

---

[62] *Jones*, 462 U.S. at 535–36 ("With the passage of time, an individual worker often becomes more valuable to his employer . . .  Furthermore, the wages of workers as a class may increase over time.").

[63] *Culver*, 722 F.2d at 122.

[64] *Id.* at 120–21.

[65] *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1461 (5th Cir. 1987).

[66] *Id. See also Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 899 (5th Cir. 1989) (finding that an expert's testimony that a dramatic reduction of the oil and gas work force merited a reduction in future wage loss damages by 25 percent was not clearly erroneous). While this Court notes that other courts and commentators have found that loss of future wages and loss of earning capacity are two distinct and separate elements of damages, this Fifth Circuit precedent weighs against excluding this testimony here. *See generally* 2 American Law of Torts § 8:27 ("The loss of future wages and the loss of ability to earn are two separate and distinct elements of damages." (citations omitted));

While courts "commonly exclude many relevant factors from consideration on the basis that they are so speculative that they cannot accurately be determined,"[67] the Court here cannot find at this time that Defendant's testimony will be so speculative or irrelevant as to merit exclusion from trial. Moreover, because this is a bench trial, there is substantially less danger that this evidence may produce any unfair prejudice or confuse the issues.[68]

Cormier further argues that Quiram may not offer testimony regarding alleged downturns in the local oil and gas industry because Quiram is not offered as an expert witness or qualified to testify as an expert.[69] As stated *supra*, Federal Rule of Evidence 701 permits a lay witness to offer testimony that is rationally based on the witness's perception, helpful to the factfinder, and not based on scientific, technical, or other specialized knowledge. Here, Defendants aver that Quiram's testimony on the conditions of the oil and gas industry in South Louisiana will be based on his own perceptions and personal experiences as the owner of M&M Wireline.[70]

In *LaCombe v. A-T-O, Inc.*, the Fifth Circuit held that an owner of property may testify

---

Hon. D. Duff McKee, 29 Am. Jur. Proof of Facts 3d 259 ("Loss of earning capacity may or may not involve proof of an actual loss of earnings."); *Wilburn v. Maritrans GP Inc*., 139 F.3d 350 (3d Cir. 1998) (holding that a plaintiff does not need to prove that he or she will earn less money in the future than he or she would have but for the injury to recover loss of future wage earning capacity, but instead must only show a diminution in his or her ability to earn a living).

[67] *Id.*

[68] *United States v. Nicholson*, 492 F.2d 124, 124 (5th Cir. 1974) ("[T]he prejudicial impact of erroneously admitted evidence is thus presumed to be substantially less than it might have been in a trial before a jury." (citing *United States v. Dillon*, 436 F.2d 1093, 1095 (5th Cir. 1971))). *See Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (although evidence also may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, "[t]his portion of Rule 403 has no logical application to bench trials"); *Cowen v. Allstate Ins. Co.*, No. 11-118, 2012 WL 10591, at *3 (E.D. La. Jan. 3, 2012) (Vance, J.) ("Because this is a bench trial, the Court does not find her argument [regarding unfair prejudice] availing.").

[69] Rec. Doc. 79 at 7–8.

[70] Rec. Doc. 88 at 1.

regarding the value of his property without being qualified as an expert witness.[71] Similarly, in *Mississippi Chemical Corporation v. Dresser-Rand Company*, the Fifth Circuit found that a layperson witness could testify about lost production and lost profits because "the witness has direct knowledge of the business accounts underlying the profit calculation."[72] Here, the Court finds that Quiram may offer testimony regarding his own employees' pay and work schedule and changes in the local oil and gas industry, as it appears to be based on his own perceptions as the owner of M&M Wireline and his eleven years of personal experience in the oilfield industry.[73] On cross-examination, Cormier will have the opportunity to challenge Quiram's testimony, credibility, and reliability of his opinions.[74] As stated *supra*, the risk that a factfinder may attribute undue weight to such lay testimony or that Cormier will be unduly prejudiced by this evidence is substantially lessened during a bench trial.[75]

## IV. Conclusion

The Court finds that Quiram's challenged testimony regarding the current pay and work schedule of M&M Wireline employees and an alleged downturn in the oil and gas industry in South Louisiana may be relevant to deciding loss of earning capacity damages, and that the danger of any undue prejudice or confusion of the issues is substantially lessened by the fact that this is a

---

[71] 679 F.2d 431, 434 (5th Cir. 1982).

[72] 287 F.3d 359, 373 (5th Cir. 2002).

[73] *See* Rec. Doc. 88 at 5.

[74] *Mississippi Chem. Corp. v. Dresser-Rand Co.,* 287 F.3d 359, 374 (5th Cir. 2002); *see* d *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) ("The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.").

[75] *Crowe v. Smith*, 151 F.3d 217, 234 (5th Cir. 1998) (noting that fear that a jury will according undue weight to the testimony of an attorney "is inapplicable where as here, the testimony is made to a judge, not a jury."); *see Gulf States Utilities Co.*, 635 F.2d at 519.

bench trial. The Court also finds that Quiram, the owner of M&M Wireline with eleven years of personal experience in the oilfield industry, may offer such opinions as a lay witness, provided that they are rationally related to Quiram's own perceptions. Accordingly,

**IT IS HEREBY ORDERED** that M&M Wireline's "Motion to in Limine to Exclude Certain Anticipated Testimony of Martin Quiram"[76] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this ___24th___ day of January, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[76] Rec. Doc. 79.