UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN THE MATTER OF M&M WIRELINE &**            **CIVIL ACTION**
**OFFSHORE SERVICES, LLC**

                                            **NO. 15-4999**
                                            **C/W NO. 15-5338**

                                            **SECTION: "G"(5)**

## ORDER

Before the Court is Plaintiff Beaux Cormier's "Objection and Motion in Limine to Exclude Certain Anticipated Testimony of J. Stuart Wood."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant in part and deny in part the motion.

## I. Background

### A.   *Factual Background*

In this litigation, Plaintiff Beaux Cormier ("Cormier") alleges that he was employed by Defendant M&M Wireline & Offshore Services, LLC ("M&M Wireline") as a deckhand on the M/V M&M 102.[2] Cormier states that on November 30, 2014, he was transported from a platform in the Grand Bay Field to the nearby M/V M&M 102 by a "Jon Boat" owned and/or operated by Defendant Saratoga Resources, Inc. ("Saratoga").[3] According to Cormier, the operator of the Jon Boat positioned the boat so that the front of the Jon Boat was near and/or pushed up against the

---

[1] Rec. Doc. 80.

[2] Rec. Doc. 6 at 10.

[3] *Id.* at 11.

side of the M/V M&M 102.[4] When Cormier attempted to step up onto the deck, he alleges that the Jon Boat backed away from the M/V M&M 102, requiring Cormier to jump back onto the Jon Boat.[5] As a result, Cormier avers that he lost his balance and landed partially on the Jon Boat and partially in the water, causing the injuries at issue in this case.[6] Cormier contends that the Jon Boat was not secured to the M/V M&M 102 in any way, nor were there other mechanisms in place to allow for safe ingress and egress to the M/V M&M 102.[7] Cormier alleges that at the time of his accident, the M/V M&M 102 was a vessel owned and operated by M&M Wireline and engaged in operations by Saratoga (collectively, "Defendants").[8] Cormier further alleges that Defendants are liable to him for the injuries caused by their negligent acts and for failing to provide seaworthy vessels.[9] Defendants argue that any injury Cormier sustained resulted solely from Cormier's own fault, and that Cormier's alleged back injury pre-existed the incident at issue in this litigation.[10]

## B.    *Procedural Background*

On October 6, 2015, M&M Wireline filed a complaint for exoneration or limitation of liability pursuant to Rule F(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[11] M&M Wireline filed an amended complaint on October 21, 2015.[12]

---

[4] *Id.*

[5] *Id.* at 11–12.

[6] *Id.*

[7] *Id.* at 10.

[8] *Id.*

[9] *Id.* at 12–14.

[10] Rec. Doc. 15 at 5–6.

[11] Rec. Doc. 1.

[12] Rec. Doc. 4.

Cormier filed his answer to M&M Wireline's complaint for limitation of liability and his own claims on November 25, 2015.[13] On September 15, 2016, Cormier filed the instant motion seeking to preclude M&M Wireline's expert witness, J. Stuart Wood, from testifying on three topics identified in the Pre-Trial Order.[14] On September 21, 2016, M&M Wireline filed an opposition, in which M&M Wireline conceded that two of the topics identified in Cormier's motion should be excluded but opposed the exclusion of the third topic.[15]

## II. Parties' Arguments

### A.   *Cormier's Arguments in Support of Motion to Exclude*

In this motion, Cormier moves to exclude certain anticipated testimony of M&M Wireline's economic expert witness, J. Stuart Wood ("Wood").[16] According to Cormier, Defendants stated in the proposed Pre-Trial Order that Wood would testify on a number of opinions regarding Wood's assessment of Cormier's possible wage losses.[17] In particular, Cormier moves to exclude three topics from Wood's testimony: (1) that plaintiff would incur a $415,000 loss in wages based on past wage loss and assuming a 50% earnings capacity; (2) that considering the downturn in the oil and gas industry in his analysis would cause a 25% reduction in wages, which would reduce Cormier's past and future wage losses; and (3) that considering the current income level of an M&M Wireline employee in his analysis would further reduce Cormier's past

---

[13] Rec. Doc. 6.

[14] Rec. Doc. 80.

[15] Rec. Doc. 89.

[16] Rec. Doc. 80.

[17] Rec. Doc. 80-1 at 2.

and future wage losses.[18]  First, Cormier argues that topic one and topic two should be excluded because they were not included in Wood's expert report and thus are inadmissible pursuant to the Court's Pre-Trial Notice and Scheduling Order requirements.[19]

Second, Cormier avers that Wood's expert testimony should be excluded under Federal Rule of Evidence 702, as Cormier alleges that it is based on improper assumptions, insufficient facts and data, and unreliable methods.[20] Cormier contends that Wood failed to take into account any of the opinions and analysis of Defendants' vocational rehabilitation expert, Barney Hegwood, rendering Wood's method for determining loss invalid, unreliable, and contrary to expert economists' customs and practices.[21] Cormier asserts that Defendants have not established that Wood is qualified to offer an opinion on Cormier's pre-injury earning capacity or his annual income base, which Cormier argues is the province of a vocational expert.[22] Cormier avers that data on the current work schedule and pay of M&M Wireline employees is insufficient to base Wood's expert opinion on.[23] Cormier further contends that downturn in the oil and gas industry in South Louisiana and the current pay and work schedule of employees of M&M Wireline, a single company in one industry, cannot be used to minimize Cormier's loss of earning capacity

---

[18] *Id.* at 2–3.

[19] *Id.* at 3, 8–9 (citing Rec. Doc. 9). As stated *infra*, M&M Wireline concedes this argument and states that it will not seek to introduce these opinions at trial. *See* Rec. Doc. 89 at 1.

[20] Rec. Doc. 80-1 at 9.

[21] *Id.* at 10.

[22] *Id.*

[23] *Id.*

damages.[24] Cormier argues that such testimony based only on information from the owner of M&M Wireline, Martin Quiram, would be highly speculative, prejudicial, and irrelevant.[25]

**B.    *M&M Wireline's Arguments in Opposition to Motion to Exclude***

In response, M&M Wireline concedes that the first topic and the second topic identified by Cormier and listed in the parties' proposed Pre-Trial Order were not included in Wood's expert report.[26] Thus, M&M Wireline agrees that Defendants will not introduce any testimony on those topics.[27] M&M Wireline opposes the exclusion of the topic of the effect a downturn in the oil and gas industry would have on the calculation of income loss generally and the third topic listed in the parties' proposed Pre-Trial Order, which M&M Wirelines states were included in the expert report.[28] First, M&M Wireline argues that objections to the third topic, "or any part of topics 1 and 2 contained in the expert report," are untimely.[29] M&M Wireline avers that these topics were included in Wood's export report that was timely submitted by the Court's Scheduling Order deadline of June 30, 2016.[30] M&M Wireline contends that any non-evidentiary motions had to be filed in sufficient time to permit hearing thereon no later than August 3, 2016, *i.e.* by July 19, 2016; however, M&M Wireline points out that this motion was not filed until September 15, 2016.[31]

---

[24] *Id.* at 12.

[25] *Id.* at 15.

[26] Rec. Doc. 89 at 1.

[27] *Id.*

[28] *Id.* at 1–2.

[29] *Id.* at 2.

[30] *Id.*

[31] *Id.*

Thus, M&M Wireline argues that Cormier's objections to topic three, "any part of topics 1 and 2 contained in the report," the contents of the expert report, and the qualifications of Wood cannot now be raised.[32] M&M Wireline points out that the downturn in the oil and gas industry was referenced in Wood's report, although M&M Wireline concedes that Wood's opinions in topic two, which is based on the assumption of a downturn in the oil and gas industry, was not.[33]

Second, M&M Wireline asserts that Wood is qualified to render an expert opinion on past and future wage loss and loss of future earning capacity, as he is an expert economist.[34] M&M Wireline alleges that Cormier did not cite to any authority that an expert economist must consider the findings of a vocation rehabilitation expert before making his calculations.[35] M&M Wireline points out that Wood considered Martin Quiram's information regarding the current pay and work schedule of his employees as well as pay and personnel records in coming to his conclusion.[36] According to M&M Wireline, Cormier's objections to the sources of Wood's expert testimony goes to the weight of the evidence, not admissibility.[37] Moreover, M&M Wireline asserts that the part of topic two that references the downturn in the oil and gas industry is admissible, as the report indicated that "changes in [the] economic conditions" and "the expectations of demand for the economic activity in which Mr. Cormier would be involved" may influence the calculation of

---

[32] *Id.*

[33] *Id.* at 1–2.

[34] *Id.* at 3.

[35] *Id.*

[36] *Id.*

[37] *Id.*

income loss.[38] Thus, M&M Wireline argues that Wood may testify on the topic of the downturn in the oil and gas industry.[39]

### III. Law and Analysis

*A.    Legal Standard for Expert Reports*

"Collectively, the provisions of Rule 26 of the Federal Rules of Civil Procedure require parties to disclose the identity of their expert witnesses, as well as those experts' reports in accordance with the deadlines established by the Court's scheduling order."[40] The Federal Rules of Civil Procedure permit supplementation of an expert report, but "[a]ny additions or changes to [the] information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."[41] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[42] In evaluating whether a party's failure to disclose is harmless, courts look to four factors: (1) the explanation for the party's failure to disclose; (2) the potential prejudice to the opposing party if the evidence is allowed; (3) the availability of a continuance to cure such prejudice; and (4) the importance of the evidence.[43]

---

[38] *Id.* at 4.

[39] *Id.*

[40] *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) (Barbier, J.)(citing Fed. R. Civ. P. 26(a)(2) (requiring disclosure of identity and written reports of expert witnesses); Fed. R. Civ. P. 26(a)(3)(B) (providing default deadlines for expert disclosures that apply "[u]nless the court orders otherwise")).

[41] Fed. R. Civ. P. 26(e)(2).

[42] Fed. R. Civ. P. 37(c)(1).

[43] *Red Dot Blds.*, 2012 WL 2061904, at *4 (citing *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 280 (5th

**B.      *Legal Standard for Expert Testimony***

The district court has considerable discretion to admit or exclude expert testimony under

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[44] Rule

702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or
> education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier
> of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[45]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702

requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony

or evidence admitted is not only relevant, but reliable."[46] The overarching goal "is to make certain

that an expert, whether basing testimony on professional studies or personal experience, employs

in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

the relevant field."[47] The court must also determine whether the expert's reasoning or methodology

---

Cir.2009)).

[44] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[45] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[46] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[47] *Kumho Tire*, 526 U.S. at 152.

"fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[48]

A court's role as a gatekeeper does not replace the traditional adversary system,[49] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[50] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[51] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[52]

## C.    *Analysis*

Cormier moves to exclude the three topics of anticipated testimony of M&M Wireline's economic expert witness, J. Stuart Wood, as identified in the parties' proposed Pre-Trial Order:

> (1) Using a $45,000 per year income, plaintiff would incur a past wage loss of $56,000 and, assuming a 50 percent earnings capacity, he would incur a $415,000 prospective loss. (2) Considering the downturn in the oil/gas industry and thus assuming a 25 percent reduction in wages or a $34,000 yearly income, plaintiff would incur a past lost wage of $43,000 and a future wage loss (net of 50 percent capacity) of $314,000. (3) Considering the current income level of a wireline helper of $18,200, plaintiff would incur a past wage loss of $25,000, plus a $63,000 future wage loss if he is only able to earn the minimum wage.[53]

---

[48] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[49] *See Daubert*, 509 U.S. at 596.

[50] Fed. R. Evid. 702 advisory committee's note to 2000 Amendments.

[51] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[52] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[53] Rec. Doc. 80-1 at 1–3.

### 1.     Whether Wood's testimony exceeds the scope of Wood's expert report

Cormier argues that because topic one [54] and topic two [55] of Wood's testimony as identified by the parties' proposed Pre-Trial Order were not included in Wood's expert report, those topics should be excluded.[56]  Defendants concede that, "to the extent that the first and second topics identified in the Pre Trial Order were not in the expert report, Defendants will not introduce any testimony on those topics."[57] Accordingly, the Court will grant Cormier's motion to the extent that it seeks to exclude Wood's anticipated testimony on topic one and topic two that were included in the proposed Pre-Trial Order but were not included in Wood's expert report.[58]

Defendants contend, however, that Wood's expert report referenced the effect a downturn in the oil and gas industry would have on the calculation of income loss generally, and thus that topic is admissible.[59] In Wood's export report, he states that the "most appropriate basic evidence" for Cormier's earning capacity is his past history of income.[60] Wood further notes that the

---

[54] "(1) Using a $45,000 per year income, plaintiff would incur a past wage loss of $56,000 and, assuming a 50 percent earnings capacity, he would incur a $415,000 prospective loss." *Id.*

[55] "(2) Considering the downturn in the oil/gas industry and thus assuming a 25 percent reduction in wages or a $34,000 yearly income, plaintiff would incur a past lost wage of $43,000 and a future wage loss (net of 50 percent capacity) of $314,000." *Id.*

[56] Rec. Doc. 80-1 at 8–9.

[57] Rec. Doc. 89 at 1.

[58] *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). *See, e.g.*, *Honey–Love v. United States*, No. 14-2185, 2016 WL 1171483, at *3 (S.D. Tex. Jan. 21, 2016) ("The purpose of the Rule 26 requirements is to provide the opposing parties with notice of the scope of the expert's testimony, allowing those parties the opportunity to challenge the expert's qualifications or retain an opposing expert. Failure to comply with these requirements may result in the court excluding the expert's testimony at trial."), *aff'd*, No. 16-20080, 2016 WL 6109911 (5th Cir. Oct. 19, 2016).

[59] *Id.* at 1, 4.

[60] Rec. Doc. 80-4 at 3.

exceptions to this include "situations in which the incomes that would have been earned in the past are no longer available . . . (due, for example, *to changes in industry economic conditions*)."[61] Additionally, Wood states in his report that Cormier's future income levels can change due to a variety of economic influences, including "the expectations of demand for the economic activity in which Mr. Cormier would be involved."[62] Accordingly, because it appears that Wood included references to changing economic conditions in the oil and gas industry in his expert report, the Court will address Cormier's substantive arguments to exclude the general topic of the downturn in the oil and gas industry.

### 2.    Whether Cormier's motion is timely

M&M Wireline contends that because the general topic of the downturn in the oil and gas industry and topic three were included in Wood's expert report, Cormier's motion to exclude these topics under Rule 702 is untimely pursuant to this Court's Scheduling Order.[63] Pursuant to this Court's first Scheduling Order, non-evidentiary motions must have been filed and served in sufficient time to permit hearing thereon no later than August 3, 2016.[64] Cormier did not file the instant motion until September 15, 2016.[65] However, after the trial in this matter was continued on September 23, 2016,[66] this Court subsequently issued a Revised Scheduling Order extending the

---

[61] *Id.* (emphasis added).

[62] *Id.* at 4.

[63] Rec. Doc. 89 at 4.

[64] Rec. Doc. 9 at 1.

[65] Rec. Doc. 80.

[66] Rec. Doc. 97.

non-evidentiary pretrial motion deadline until December 21, 2016.[67] Accordingly, the Court will not dismiss the remainder of Cormier's motion on timeliness grounds and will instead address the merits of the motion.

### 3.     Whether Wood's testimony should be excluded pursuant to Rule 702

Cormier argues that Wood's expert testimony should be excluded under Federal Rule of Evidence 702, as Cormier alleges that it is based on improper assumptions, insufficient facts and data, and unreliable methods.[68]  Cormier asserts that Defendants have also not established that Wood is qualified to offer these opinions, and that Wood failed to consider the analysis of Defendants' vocational rehabilitation expert, Barney Hegwood.[69] Cormier further argues that the alleged downturn in the oil and gas industry and the current pay and work schedule of M&M Wireline's employees as provided by M&M Wireline's owner cannot be used to minimize Cormier's loss of earning capacity damages.[70]

In response, M&M Wireline asserts that Wood is qualified to render an expert opinion on past and future wage loss and loss of future earning capacity, as he is an expert economist, and there is no requirement that an economist must consider the analysis of a vocational rehabilitation expert.[71] M&M Wireline points out that Wood considered Martin Quiram's information regarding the current pay and work schedule of his employees as well as pay and personnel records to arrive

---

[67] Rec. Doc. 116.

[68] Rec. Doc. 80-1 at 9.

[69] *Id.* at 9–10.

[70] *Id.* at 12.

[71] Rec. Doc. 89 at 3.

at his conclusions, and that this is a sufficient basis on which to assert his expert opinions.[72]

Rule 702 of the Federal Rules of Evidence gives the Court considerable discretion over the admission of expert testimony.[73] As stated *supra*, for the expert testimony to be admissible, Rule 702 requires that the witness be qualified "by knowledge, skill, experience, training, or education" and that the testimony be based on "sufficient facts or data" and proper application of "reliable principles and methods" to the facts of this case.[74] Here, M&M Wireline seeks to offer Wood as an economic expert.[75] According to Wood's Curriculum Vitae, Wood received an MBA in 1967 and a Ph.D. in 1970, and appears to have been a professor of economics and finance for roughly 47 years.[76] Wood has published numerous articles, papers, and books on economics and finance, and has provided expert testimony in over 100 cases during the last four years.[77] Accordingly, the Court is not persuaded by Cormier's arguments regarding Wood's qualifications. To the extent that Cormier believes that Wood is not qualified to opine on the facts at issue in this matter, he may attack Wood's conclusions through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[78] The Court therefore declines to exclude Wood's testimony on the ground that he is not qualified as an economic expert.

---

[72] *Id.*

[73] *See Suazo v. Atl. Sounding Co.*, No. 05-6043, 2009 WL 3254446, at *1 (E.D. La. Mar. 10, 2009) (Vance, J.).

[74] *Id.*

[75] *See* Rec. Doc. 61 at 36.

[76] Rec. Doc. 80-4 at 11.

[77] *Id.* at 12–22.

[78] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Next, Cormier contends that Wood's testimony should be excluded because it is not based on sufficient facts and data or reliable principles and methods as required by Rule 702.[79] The Court notes that Wood's proposed testimony appears to be founded on his extensive economics experience and knowledge,[80] and his expert report states that he relied on, *inter alia*, Cormier's deposition summary, pay and personnel records, information from Martin Quiram on the current pay and work schedule of M&M Wireline's employees, figures released by the U.S. Department of Labor's Bureau of Labor Statistics, and other outside publications and resources.[81] Each section of Wood's expert report further points to specific facts, documents, reports, and figures used by Wood to arrive at his opinions.[82] Although Cormier avers that Wood failed to consider the analysis of Defendants' vocational rehabilitation expert, Cormier has not pointed to any case or theory that requires an economic expert to do so or that demonstrates an economic expert's opinion is inadmissible without considering such sources. Therefore, the Court finds that Wood's expert testimony is admissible under Rule 702.

The Court further notes that Cormier's objection to Wood's testimony is precisely the sort that is best addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[83] A court's role as a gatekeeper does not replace the traditional adversary system,[84] and "[a]s a general rule, questions relating to the bases and

---

[79] Rec. Doc. 80-1 at 9–12.

[80] *See* Rec. Doc. 89 at 3; Rec. Doc. 80-4 at 11.

[81] Rec. Doc. 80-4 at 1–4.

[82] *Id.* at 2–6.

[83] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[84] *See id.*

sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[85] Because cross-examination would effectively serve Cormier's ultimate purposes, and because questions relating to the bases of an expert's opinion generally go to the weight, rather than the admissibility, of an expert opinion,[86] the Court finds there are sufficient grounds to establish the reliability of Wood's opinions.

Finally, Cormier argues that Wood is erroneously attempting to use the alleged downturn in the oil and gas industry in South Louisiana and the current pay and work schedule of M&M Wireline's employees to minimize Cormier's loss of earning capacity damages.[87] As this Court has determined in a previous Order,[88] while loss of earning capacity damages are not limited to what the plaintiff would have earned working for the same employer, testimony regarding alleged decreases in wages across an industry may be relevant evidence.[89] Wood's testimony may therefore be relevant to the extent that it shows that even if Cormier was not injured, his earning capacity would have been reduced by subsequent market changes. As the Fifth Circuit has previously held, in determining loss in earning capacity, courts "cannot ignore the fact that long term economic conditions may change or that economic forecasting may become more certain."[90] "In making awards to compensate injured plaintiffs . . . for loss of future earnings . . . fact-finders

---

[85] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[86] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[87] Rec. Doc. 80-1 at 12.

[88] *See* Rec. Doc. 120.

[89] *Id.* at 9–12.

[90] *Culver*, 722 F.2d at 122.

must attempt, in some degree, to gauge future events."[91] Moreover, the Fifth Circuit has previously upheld a district court's refusal to strike testimony on the depressed condition of the oil and gas industry offered in the context of loss of future wages damages.[92] The Fifth Circuit held that such testimony "was relevant to the jury's determination of whether [the plaintiff] could have continued as a maritime worker in the absence of his accident."[93]

While courts "commonly exclude many relevant factors from consideration on the basis that they are so speculative that they cannot accurately be determined,"[94] the Court cannot find at this time that Wood's testimony will be so speculative or irrelevant as to merit exclusion from trial. Moreover, because this is a bench trial, there is substantially less danger that this evidence may produce any unfair prejudice or confuse the issues.[95] Therefore, the Court will not exclude Wood's references to the alleged downturn in the oil and gas industry in South Louisiana or to the

---

[91] *Id.* at 120–21.

[92] *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1461 (5th Cir. 1987).

[93] *Id. See also Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 899 (5th Cir. 1989) (finding that an expert's testimony that a dramatic reduction of the oil and gas work force merited a reduction in future wage loss damages by 25 percent was not clearly erroneous). While this Court notes that other courts and commentators have found that loss of future wages and loss of earning capacity are two distinct and separate elements of damages, this Fifth Circuit precedent weighs against excluding this testimony here. *See generally* 2 American Law of Torts § 8:27 ("The loss of future wages and the loss of ability to earn are two separate and distinct elements of damages." (citations omitted)); Hon. D. Duff McKee, 29 Am. Jur. Proof of Facts 3d 259 ("Loss of earning capacity may or may not involve proof of an actual loss of earnings."); *Wilburn v. Maritrans GP Inc*., 139 F.3d 350 (3d Cir. 1998) (holding that a plaintiff does not need to prove that he or she will earn less money in the future than he or she would have but for the injury to recover loss of future wage earning capacity, but instead must only show a diminution in his or her ability to earn a living).

[94] *Id.*

[95] *United States v. Nicholson*, 492 F.2d 124, 124 (5th Cir. 1974) ("[T]he prejudicial impact of erroneously admitted evidence is thus presumed to be substantially less than it might have been in a trial before a jury." (citing *United States v. Dillon*, 436 F.2d 1093, 1095 (5th Cir. 1971))). *See Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (although evidence also may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, "[t]his portion of Rule 403 has no logical application to bench trials"); *Cowen v. Allstate Ins. Co.*, No. 11-118, 2012 WL 10591, at *3 (E.D. La. Jan. 3, 2012) (Vance, J.) ("Because this is a bench trial, the Court does not find her argument [regarding unfair prejudice] availing.").

current pay and work schedule of M&M Wireline's employees at this time.

## IV. Conclusion

For the reasons stated above, the Court finds that Wood's anticipated testimony on topic one [96] and topic two [97] as listed in the parties' proposed Pre-Trial Order were not included in Wood's expert report and should be excluded. The Court further finds that Wood's testimony on the topic of the effect a downturn in the oil and gas industry would have on the calculation of income loss generally and on topic three [98] is relevant and admissible under Rule 702. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Beaux Cormier's "Objection and Motion in Limine to Exclude Certain Anticipated Testimony of J. Stuart Wood" is **GRANTED IN PART** to the extent that Wood's anticipated testimony on topic one and topic two as listed in the parties' proposed Pre-Trial Order is excluded and **DENIED IN PART** to the extent that the topic of the effect a downturn in the oil and gas industry would have on the calculation of income loss generally and on topic three are admissible under Federal Rule of Evidence 702.

**NEW ORLEANS, LOUISIANA**, this ___31st___ day of January, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[96] *See* Rec. Doc. 80-1 at 2 ("(1) Using a $45,000 per year income, plaintiff would incur a past wage loss of $56,000 and, assuming a 50 percent earnings capacity, he would incur a $415,000 prospective loss."); Rec. Doc. 61 at 36.

[97] *See* Rec. Doc. 80-1 at 2 ("(2) Considering the downturn in the oil/gas industry and thus assuming a 25 percent reduction in wages or a $34,000 yearly income, plaintiff would incur a past lost wage of $43,000 and a future wage loss (net of 50 percent capacity) of $314,000"); Rec. Doc. 61 at 36.

[98] *See* Rec. Doc. 80-1 at 2 ("(3) Considering the current income level of a wireline helper of $18,200, plaintiff would incur a past wage loss of $25,000, plus a $63,000 future wage loss if he is only able to earn the minimum wage"); Rec. Doc. 61 at 36.